IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 20-cv-1933-WJM-STV

LEAH R. SHOSTROM,

      Plaintiff,

v.

ETHICON, INC., and
JOHNSON & JOHNSON,

      Defendants.

---

## ORDER GRANTING IN PART, DENYING IN PART, AND DEFERRING IN PART ETHICON'S MOTION FOR SUMMARY JUDGMENT

---

      This product liability action was transferred to this Court from a multi-district litigation ("MDL") proceeding in the United States District Court for the Southern District of West Virginia. *In re Ethicon, Inc. Pelvic Repair Systems Products Liability Litigation*, No. 2:12-md-2327 (S.D. W. Va.). The MDL involves claims of harm resulting from implantation of various polypropylene-based mesh products.

      Before the Court is Defendants Ethicon, Inc. and Johnson & Johnson's (jointly, "Ethicon") Motion for Summary Judgment ("Motion for Summary Judgment"). (ECF Nos. 40, 41.) Plaintiff Leah R. Shostrom responded in opposition (ECF No. 44), and Ethicon replied (ECF No. 46.).

      Before the Court addresses the substance of the Motion for Summary Judgment, it is necessary to address the quality of the parties' briefs. Underlying the papers is the flawed assumption that this Court is as familiar with the litigation as the judge presiding

over the MDL in terms of relevant facts, applicable law, and the medical devices at issue.[1]  A few specific issues include: the parties' routinely fail to cite cases applying Colorado law, or sometimes fail to cite case law at all; the parties refer to "this Court," when it appears as though they really mean the Southern District of West Virginia (*see, e.g.*, ECF No. 41 at 12; ECF No. 44 at 3);[2] and the parties do not provide any background summary of the case to bring the Court up to speed, such as a brief medical history of Shostrom, her medical team, her symptoms, her implant surgery, her post-surgery complications, the explant surgery, and any permanent complications leading to this lawsuit.  The skeletal statements of material facts were also not particularly enlightening.  The Court especially did not appreciate Ethicon's repeated cursory and undeveloped or underdeveloped arguments.  Ultimately, the Court finds it absurd but necessary to remind the parties that unlike them, and unlike the presiding judge in the MDL, the undersigned's life has not been intertwined with pelvic mesh litigation for the last seven years.

In sum, it is unclear whether the quality of the briefs is low because the parties and counsel are involved in numerous similar cases and are repurposing material, or some other reason exists.  Nonetheless, the Court expects the quality of lawyering to improve for the duration of this case.

In addition, the Court strongly cautions the parties **not** to use any future Rule 702 motions, motions *in limine*, or other pretrial motions as a vehicle to cure the defects of

---

[1] While the Court is aware that the MDL materials are part of the docket, the Court lacks the time to review every filing in this case and relies on the parties to direct it to the relevant docket entries via specific, accurate citations.

[2] The Court understands these briefs were filed with the MDL, but the case is now in the District of Colorado.

their summary judgment briefing.  *See* WJM Revised Practice Standard III.G ("A motion *in limine* that is a veiled motion for summary judgment may also be denied out of hand.")   Any filing in contravention of this cautionary directive will be summarily stricken.

For the following reasons, the Motion for Summary Judgment is granted in part, denied in part, and deferred in part.

## I. STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986).  A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).  An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial.  *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II. BACKGROUND[3]

On October 22, 2007, in Greeley, Colorado, Shostrom, a resident of Colorado, was implanted with the Prolift device ("Prolift") by Kaea Beresford, M.D., and the TVT Secur device ("TVT-S") (collectively, the "mesh products") by Gary Goodman, M.D. (ECF No. 1 ¶¶ 4, 8–12; Pl. Fact Sheet at 5[4]).

Using a Short Form Complaint,[5] Plaintiff filed this action on June 26, 2013, alleging claims for: Negligence (Count I); Strict Liability – Manufacturing Defect (Count II); Strict Liability – Failure to Warn (Count III); Strict Liability – Defective Product (Count IV); Strict Liability – Design Defect (Count V); Common Law Fraud (Count VI); Fraudulent Concealment (Count VII); Constructive Fraud (Count VIII); Negligent Misrepresentation (Count IX); Negligent Infliction of Emotional Distress (Count X); Breach of Express Warranty (Count XI); Breach of Implied Warranty (Count XII); Violation of Consumer Protection Laws (Count XIII); Gross Negligence (Count XIV); Unjust Enrichment (Count XV); Loss of Consortium (Count XVI); Punitive Damages (Count XVII); and Discovery Rule and Tolling (Count XVIII).[6]  (ECF No. 1.)

---

[3] The following factual summary is based on the parties' briefs on the Motion and documents submitted in support thereof.  These facts are undisputed unless attributed to a party or source.  All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

[4] Neither party identifies a docket entry number for "Plaintiff's Fact Sheet," and the Court cannot locate this document.

[5] The Court located the Short Form Complaint (ECF No. 1) and the First Amended Master Long Form Complaint (ECF No. 50-1) on the docket.  Neither pleading, however, details the allegations specific to Shostrom.

[6] Ethicon does not request summary judgment on the claims for Punitive Damages (Count XVII) and Discovery Rule and Tolling (Count XVIII) because the former is not a cause of action, but an element of recovery, and the latter is not an independent claim, but a doctrine affecting the limitations period.  (ECF No. 41 at 1 n.1.)

Shostrom decided to have the mesh surgery on the recommendation of her doctors because she was suffering from pelvic organ prolapse.[7]  (ECF No. 41 at 2 ¶ 3; ECF No. 44 at 1 ¶ 3.)  Shostrom relied on the advice of her physicians in making her decision to have the mesh products implanted.  (ECF No. 41 at 2 ¶ 3; ECF No. 44 at 1 ¶ 3.)  However, according to Shostrom, she and her implanting physicians would not have used the mesh products if Ethicon had adequately warned her doctors of the risks.  (ECF No. 44 at 1 ¶ 3.)

The parties dispute Dr. Beresford's use of the Prolift Instruction for Use ("IFU") in connection with Shostrom's procedure.  Ethicon states that Dr. Beresford did not recall reading the Prolift IFU before operating on Shostrom.  (ECF No. 41 at 3 ¶ 4.)  In doing a risk-benefit analysis regarding using Prolift for Shostrom, Dr. Beresford "would have used all the information that she had, including the medical literature, her own experience, and discussions with colleagues."  (*Id.*)

Shostrom states that Dr. Beresford indicated that she reviewed the Prolift IFU before Shostrom's surgery and incorporated such information into her practice and treating decisions.  (ECF No. 44 at 2 ¶ 4.)  In addition, Shostrom states that "Dr. Beresford indicated that, had she known the true risks associated with the Prolift device, she would likely have recommended an alternative treatment for [Shostrom]."  (ECF No. 44 at 2 ¶ 4.)

In addition, the parties dispute Dr. Goodman's use of the TVT-S IFU in connection with Shostrom's procedure.  Ethicon states that Dr. Goodman testified it was

---

[7] Although the parties' statements of fact do not say as much, the evidence shows Shostrom also suffered from incontinence (ECF No. 40-3 at 6), which is why her physicians implanted the TVT-S.

reasonable to assume that he would have reviewed the TVT-S IFU before performing the surgery for the first time, but he did not remember how long before Shostrom's surgery he had read the TVT-S IFU.  (ECF No. 41 at 3 ¶ 5.)  Further, Ethicon states that Dr. Goodman would not say that he relied on the IFU for Shostrom's surgery, and he did not remember what information the IFU contained.  (*Id.*)  According to Ethicon, Dr. Goodman's "risk-benefit discussion incorporates his knowledge gained from education, experience, training, discussions with colleagues, trainings, review of IFUs, peer reviewed medical literature, and information from sales [representatives]."  (*Id.*)

By contrast, Shostrom states that Dr. Goodman indicated that he reviewed the TVT-S IFU before her surgery.  (ECF No. 44 at 2 ¶ 5.)  Further, Shostrom states that Dr. Goodman testified that he relied on the information from the IFU in treating her.  (*Id.*)

### III. CHOICE OF LAW

The parties agree that for cases filed directly in the MDL, "the choice of law that applies is the place where the plaintiff was implanted with the product."  *Belanger v. Ethicon, Inc.*, 2014 WL 346717, at *7 (S.D. W. Va. Jan. 30, 2014); (ECF No. 41 at 2–3; ECF No. 44 at 2).  Colorado applies the "most significant relationship" test found in Sections 6 and 145 of the Restatement (Second) of Conflicts of Law in tort actions.  *See Elvig v. Nintendo of Am., Inc.*, 696 F. Supp. 2d 1207, 1210 (D. Colo. 2010) (citations omitted).  As the place of Shostrom's residence and the state where her injuries occurred, Colorado has the most significant relationship to this case.  *See, e.g., Caldwell v. Geico Gen. Ins. Co.*, 2010 WL 865773, at *9 (D. Colo. Mar. 8, 2010); *see also Bellew v. Ethicon, Inc.*, 2014 WL 6886129, at *2 (S.D. W. Va. Nov. 24, 2014).

## IV. ANALYSIS

As a threshold matter, Shostrom does not oppose summary judgment as to her claims for Strict Liability - Defective Product (Count IV) and Loss of Consortium (Count XVI) (ECF No. 44 at 1.)  Accordingly, Ethicon's motion is granted as to these counts, which will be dismissed with prejudice.

### A.      Strict Liability – Failure to Warn (Count III)

Under Colorado law, "a failure to warn adequately can render a product, which is otherwise free of defect, defective for purposes of strict liability recovery."  *Carver v. Am. Med. Sys. Inc.*, 2020 WL 8258217, at *2 (D. Colo. May 18, 2020) (quoting *O'Connell v. Biomet, Inc.*, 250 P.3d 1278, 1280 (Colo. App. 2010)).  To succeed on a failure-to-warn claim, the plaintiff bears the burden to prove that the manufacturer of the product gave (1) an inadequate warning of the danger (2) that caused the injury at issue.  *Id.*  In the medical context, the manufacturer's duty to warn runs to the prescribing physician or nurse practitioner, not the patient, to warn "of any potential dangers that may result from the drug's [or device's] use."  *Id.*  This is because "the physician is trained to assess the risks and benefits of the drug [or device] as applied clinically to a particular patient."  *Id.*  This is known as the learned intermediary doctrine.

Even when instructions or warnings are inadequate, the doctrine still can come into play on the causation prong if the evidence shows that proper warnings would not have changed the course of treatment.  *Id.*  As the Fifth Circuit has explained, "if . . . the physician was aware of the possible risks involved in the use of the product but decided to use it anyway, the adequacy of the warning is not a producing cause of the injury and the plaintiff's recovery must be denied."  *Id.* (internal quotation marks omitted) (quoting *Ackermann v. Wyeth Pharm.*, 526 F.3d 203, 208 (5th Cir. 2008)); *see also Thom v.*

*Bristol-Myers Squibb Co.*, 353 F.3d 848, 853 (10th Cir. 2003) (following the Fifth Circuit's approach to the learned intermediary doctrine); *Lynch v. Olympus Am., Inc.*, 2019 WL 2372841, at *14 (D. Colo. June 5, 2019) (applying *Ackermann* to a failure to warn claim arising under Colorado law).  And importantly, "even if the physician is not aware of a risk, 'the plaintiff must show that a proper warning would have changed the decision of the treating physician, *i.e.*, that but for the inadequate warning, the treating physician would have not used or prescribed the product.'"  *Id.*  To survive a motion for summary judgment in a medical failure-to-warn case, then, a plaintiff must demonstrate both the inadequacy of the warning given to the physician and that this inadequacy caused the physician to prescribe the device at issue.

Ethicon argues that Shostrom cannot show causation because Dr. Beresford and Dr. Goodman did not rely on the products' IFUs.  (ECF No. 41 at 4–5.)  Specifically, Ethicon argues Dr. Beresford "did not recall reading" the Prolift IFU before operating on Shostrom.  (*Id.* at 4.)  Regarding Dr. Goodman, Ethicon argues that "although Dr. Goodman testified that it was reasonable to assume that he would have reviewed the [TVT-S] IFU before performing the surgery for the first time, he did not remember how long before Shostrom's surgery he had read [it]."  (*Id.* at 5.)  Further, Ethicon argues that Dr. Goodman "would not say that he relied on the IFU for Plaintiff's surgery" and "did not remember what information the IFU contained."  (*Id.*)

Despite these assertions, Shostrom identifies testimony by Dr. Beresford and Dr. Goodman that warrants denying summary judgment on the failure to warn claim.  First, Dr. Beresford testified to the following:

> Q: If Ethicon had provided this document [Prolift IFU] to you
> in training, this is the type of document that you would have

> looked at and reviewed and relied upon in addition to your
> other sources of information, fair?
>
> . . .
>
> A: I'm assuming I read it.
>
> . . .
>
> A: I don't have an independent recollection of reading it.
>
> . . .
>
> Q: Because it was information that you were using in your
> practice to treat patients, right?
>
> A: Yes.

(ECF No. 40-2 at 5.)  Dr. Beresford further testified:

> Q: Okay. So while you might not know that that's called the
> Instructions For Use, it appears you had an IFU in your
> possession, fair?
>
> A: Yes.
>
> Q: And you would have read, reviewed, and relied upon this
> type of information in your practice when you were practicing
> medicine, correct, Doctor?
>
> A: Yes.
>
> . . .
>
> A. It would have been something I would have read, yes.

(ECF No. 44-1 at 10.)  In addition, Dr. Beresford testified that the IFU was at least *a*

source, if not her primary source, of information provided from manufacturers like

Ethicon.  (*Id.* at 6.)  When asked whether anyone from Ethicon ever told Dr. Beresford

that the Prolift device should not be implanted in women who are sexually active, she

responded "I don't think so," and also stated "I don't think you would put something, a

device, in a person—I think that would have been a contraindication."  (*Id.* at 7.)

Based on this testimony, Shostrom has, at minimum, identified a material question of facts as to whether Dr. Beresford relied on the IFU in performing Shostrom's surgery.  She has also raised a material question of fact as to whether Dr. Beresford would have used Prolift on Shostrom had she been adequately warned that it should not be implanted in a sexually active woman.

Regarding Dr. Goodman, Plaintiff points to Dr. Goodman's testimony regarding the TVT-S IFU:

> Q: And, likewise, you would, therefore, [have] reviewed the TVT-S IFU before you implanted it in Ms. Shostrom, correct?
>
> . . .
>
> A: Yes.
>
> . . .
>
> Q: Is it fair to say that you incorporated the information that was provided in the TVT-S IFU in deciding how to treat Ms. Shostrom's incontinence?
>
> . . .
>
> A: Incorporate, yes.

(ECF No. 44-2 at 5.)  Dr. Goodman also testified that had Ethicon provided additional risk information to him, including that Ethicon's plastic mesh could elicit a "chronic inflammatory response," he would have shared that information with Shostrom, and the information could have affected his decision on what treatments to recommend to her. (*Id.* at 9.)

The Court notes that Dr. Goodman testified that he "hesitat[ed] on the verb 'rely,'" when directly asked whether he relied upon the information in the TVT-S IFU.

(*Id.* at 5.)  However, as with Dr. Beresford, the Court finds that such testimony appears to establish that Dr. Goodman read the IFU and at least calls into question whether he relied on the TVT-S IFU in treating Shostrom.[8]  *See Huskey*, 29 F. Supp. 3d at 742 (denying summary judgment on failure to warn claim where physician read the IFU before implanting a device, although she could not "recall the last time" she reviewed it); *Sanchez v. Boston Sci. Corp.*, 38 F. Supp. 3d 727, 735–36 (S.D.W. Va. 2014) (denying motion for summary judgment on failure to warn claims where there were disputes of fact as to whether the physician had read and relied on the directions for use of transvaginal surgical mesh product) (applying California law).

Accordingly, the Court will deny Ethicon's motion for summary judgment on Shostrom's Strict Liability – Failure to Warn claim.

## B.   Strict Liability – Design Defect (Count V)

Because analysis of this issue is inextricably intertwined with Ethicon's Motion to Limit the Case-Specific Testimony of Bruce Rosenzweig, M.D., the Court reserves ruling on this claim.  The Court will issue a subsequent order on this claim contemporaneous with a ruling on the Rule 702 motion.

## C.   Strict Liability – Manufacturing Defect (Count II)

Because analysis of this issue is inextricably intertwined with Ethicon's Motion to Limit the Case-Specific Testimony of Bruce Rosenzweig, M.D., the Court also reserves ruling on this claim.  The Court will issue a subsequent order on this claim

---

[8] In the reply, Ethicon relies on *Lewis v. Ethicon, Inc.*, 991 F.Supp.2d 748 (S.D.W. Va. Jan. 15, 2014), *aff'd in relevant part*, 601 F. App'x 205 (4th Cir. 2015).  However, as Judge Joseph R. Goodwin (the presiding judge for the MDL) found in *Huskey v. Ethicon, Inc.*, 29 F. Supp. 3d 736, 743 n.2 (S.D.W. Va. 2014), "this case is readily distinguishable from [*Lewis*]."  In *Lewis*, "the failure to warn claim was dismissed in part because the treating physician affirmatively testified that she did not rely on the IFU when prescribing the device."  *Huskey*, 29 F. Supp. 3d at 742 n.2.  Here, there is no such affirmative testimony.

contemporaneous with a ruling on the Rule 702 motion.

**D.    Negligence (Count I), Negligent Misrepresentation (Count IX), Negligent Infliction of Emotional Distress (Count X), and Gross Negligence (Count XIV)**

"To recover under a negligence theory, a plaintiff must show that the defendant breached a duty of care owed to the plaintiff and thereby caused the plaintiff's damages." *Palmer v. A.H. Robins Co.*, 684 P.2d 187, 209 (Colo. 1984).

First, Ethicon generally sets forth the elements of a negligence claim under Colorado law. (ECF No. 41 at 11.)  Then, Ethicon argues that Shostrom's "negligence-based claims are based on the same series of facts as her strict liability claims." (*Id.* at 12.)  Accordingly, Ethicon contends that summary judgment is proper on these claims because they are "duplicative of, and subsumed by, the strict liability claims." (*Id.*)  Ethicon cites only one case, *Haffner v. Stryker Corp.*, 2014 WL 4821107, at *2 (D. Colo. Sept. 29, 2014), to specifically support the proposition that the negligence-based claims are subsumed by the strict liability claims and must therefore be dismissed. (ECF No. 41 at 12.)

In response, Shostrom correctly notes that as an initial matter, although Ethicon recites the elements of a negligence claim, it does not challenge the sufficiency of Shostrom's evidence regarding any of the elements. (ECF No. 44 at 11.)  In addition, other than mentioning negligent misrepresentation, negligent infliction of emotional distress, and gross negligence in the section heading, Ethicon presents no argument or authority regarding these claims. (*Id.*)  Regarding Ethicon's primary argument of duplicative claims, Shostrom argues that none of the cases Ethicon cites hold that negligence claims are subsumed by strict liability claims. (*Id.* at 10.)  To the contrary, Shostrom asserts that the cases Ethicon cites demonstrate the availability of both strict

liability and negligence claims. (*Id.*)

The Court agrees with Shostrom. To begin, the Court finds Ethicon's argument woefully underdeveloped to the point of being cursory. Ethicon does not explain *how* the negligence-based claims are duplicative of Shostrom's strict liability claims, or even *which* strict liability claims Ethicon thinks are duplicative. Ethicon's request fails on these grounds alone.

Regardless, the Tenth Circuit has stated that "strict liability and negligence are conceptually different theories of product liability." *Perlmutter v. U.S. Gypsum Co.*, 54 F.3d 659, 663 (10th Cir. 1995) (citing *Grasmick v. Otis Elevator Co.*, 817 F.2d 88, 90 (10th Cir. 1987) (applying Colorado law)). "Under a negligence theory, the reasonableness of the manufacturer's conduct must be determined." *Id.* (citation omitted). However, under a strict liability theory, "the determination is whether the product is defective, or, if not defective, unreasonably unsafe, and whether . . . a warning was required." *Id.*

Further, *Haffner* does not, as Ethicon asserts, stand for the proposition that the negligence claim was unavailable because a strict liability claim was also asserted. Ethicon quotes the following language from *Haffner*: "[T]he plaintiff cannot show that the product was defectively designed simply because it contains cobalt and nickel. Therefore, the claim that [Defendant] was negligent by including these metals in its product must likewise fail." (ECF No. 41 at 12.) However, Ethicon does not further develop this argument, nor explain how this quotation from *Haffner* supports its argument, and nonetheless, the Court cannot see how it does so. *See United States v. Hunter*, 739 F.3d 492, 495 (10th Cir. 2013) (cursory argument not meaningfully

developed by any analysis or citation is deemed waived).

Given Ethicon's failure to analyze or substantively compare any particular negligence claim to any particular strict liability claim, the Court will deny Ethicon's request for summary judgment on Shostrom's negligence-based claims.

**E.    Fraud (Count VI), Fraudulent Concealment (Count VII), Constructive Fraud (Count VIII), Negligent Misrepresentation (Count IX), Breach of Warranty (Count XI and Count XII), Consumer Fraud (Count XIII)**

Under the learned intermediary doctrine, "the manufacturer's duty to warn runs to the prescribing physician . . ., not the patient, to warn of any potential dangers that may result from the drug's or device's use." *Carver*, 2020 WL 8258217, at *2 (quotation marks and alterations omitted) (citing *O'Connell*, 250 P.3d at 1280).  This is because "the physician is trained to assess the risks and benefits of the drug [or device] as applied clinically to a particular patient." *Id.*

Ethicon contends that Shostrom's fraud, fraudulent concealment, constructive fraud, negligent misrepresentation, breach of warranty (express and implied), and consumer fraud claims must fail because the application of the learned intermediary doctrine bars these claims as indistinguishable from Shostrom's failure to warn claim. (ECF No. 41 at 12.)  For support, Ethicon relies on other product liability lawsuits against it that dismissed plaintiffs' fraud-based claims as barred by the learned intermediary doctrine.  *See Bellew*, 2014 WL 6886129, at *5–6 (dismissing claims for fraud, fraudulent concealment, negligent misrepresentation, breach of warranty, and an Arizona Consumer Fraud Act claim because they are "simply repackaged failure to warn claims"); *Huskey*, 29 F. Supp. 3d at 744 (awarding judgment to Ethicon on fraud, fraudulent concealment, constructive fraud, negligent misrepresentation, and breach of

warranty claims under Illinois law).[9]  Ethicon makes no substantive or specific argument about Shostrom's numerous and different fraud claims; instead, Ethicon generally contends that because the fraud-based claims "are merely repurposed failure to warn claims, and the learned intermediary doctrine applies to each of them, they do not constitute separate grounds for recovery and so should be dismissed with prejudice." (ECF No. 41 at 13.)

The Court disagrees.  The only two cases on which Ethicon relies, *Huskey* and *Bellew*, are distinguishable.  In those cases, the court found that the plaintiffs' fraud-based claims were duplicative of failure to warn claims because the fraud-based claims were supported only by representations Ethicon made to the plaintiffs themselves (not their physicians), to whom Ethicon had no duty to warn under the learned intermediary doctrine.

The Court agrees with Ethicon's observation that the case upon which Shostrom relies for the proposition that courts have denied summary judgment where the plaintiff presented evidence of fraudulent misrepresentations to the implanting physician does not appear to say what Shostrom says it does.[10]  *See Herrera-Nevarez v. Ethicon, Inc.*, 2017 WL 384033, at *3 (S.D.W. Va. Jan. 26, 2017).  However, the Court has independently located at least two other Ethicon cases (admittedly not applying Colorado law) in which courts have denied summary judgment based on Shostrom's

---

[9] Neither *Bellew* nor *Huskey* applied Colorado law.

[10] This is yet another example of the sloppy briefing in this case.  Even if the case says what Shostrom says it purports to say, she provides no substantive analysis of the case and merely relies on an explanatory parenthetical.  Further, Shostrom merely cites the case number but provides no citation to Westlaw or LexisNexis; the Court had to locate the case independently.

argument.  *See, e.g.*, *Green v. Ethicon, Inc.*, ---F. Supp. 3d---, 2020 WL 6372639, at *4

(C.D. Ill. Oct. 29, 2020) (finding learned intermediary doctrine does not bar plaintiff's

fraud, negligent misrepresentation, and breach of warranty claims under Illinois law

where the evidence shows that plaintiff and her doctor relied on information provided by

defendants and the information provided by defendants failed to warn the medical

community of numerous risks); *Parks v. Ethicon, Inc.*, 2020 WL 6118774, at *7 (S.D.

Cal. Oct. 16, 2020) (internal quotation marks omitted) (denying summary judgment on

plaintiff's warning and fraud-based claims where "there is a genuine dispute as to

whether Dr. [Menefee] read [and relied upon] the IFU and as to whether [Defendants

adequately] warned Dr. [Menefee] of the . . . risk to patients from use of Gynemesh

PS").

Here, as the Court has already explained in connection with Shostrom's failure to

warn claim, questions of fact exist as to Dr. Beresford and Dr. Goodman's reliance on

the Prolift and TVT-S IFUs.  Moreover, Shostrom is not arguing that the

misrepresentations were made directly to her; rather, she argues Ethicon concealed

material information from her physicians, who relied on Ethicon's allegedly fraudulent

statements.  (ECF No. 44 at 11.)  Because there are questions of fact regarding her

physicians' reliance on Ethicon's statements, as well as how the information that was

allegedly fraudulently concealed from them would have impacted their treating

decisions, the Court will deny Ethicon's request for summary judgment on Shostrom's

fraud-based claims, insofar as Ethicon's argument is based on the application of the

learned intermediary doctrine.

## F.   Fraudulent Concealment (Count VII) - additional grounds for dismissal

Under Colorado law, the elements of fraudulent concealment are: (1)

concealment of a material existing fact that in equity and good conscience should be disclosed; (2) knowledge on the part of the party against whom the claim is asserted that such a fact is being concealed; (3) ignorance of that fact on the part of the one from whom the fact is concealed; (4) the intention that the concealment be acted upon; and (5) action on the concealment resulting in damages. *Kopeikin v. Merchants Mortg. & Trust Corp.*, 679 P.2d 599, 601 (Colo. 1984) (citation omitted).  To prevail on a claim of fraudulent concealment, "a plaintiff must show that a defendant actually knew of a material fact that was not disclosed and that the defendant's intent was to cause the plaintiff to act differently than he might otherwise have done if the information had been disclosed." (*Id.*)  A plaintiff must also show that the defendant had a duty to disclose material information.  *Mallon Oil Co. v. Bowen/Edwards Assocs., Inc.*, 965 P.2d 105, 111 (Colo. 1998).

Ethicon argues that Shostrom cannot establish the elements of a fraudulent concealment claim.  (ECF No. 41 at 13–14.)  Ethicon reiterates its argument that under the learned intermediary doctrine, it had no duty to disclose information to Shostrom. (*Id.* at 13.)  In addition, Ethicon argues that Shostrom has failed to produce evidence that Ethicon concealed information with the intent to get Shostrom to act differently than she otherwise would have if the information was disclosed to her.  (*Id.* at 13–14.)

The Court disagrees.  For the reasons explained above, the learned intermediary doctrine will not protect Ethicon from liability if it fraudulently failed to provide adequate warnings to Shostrom's physicians.  And, as Shostrom argues, a jury could reasonably infer that Ethicon fraudulently concealed safety information from Shostrom's physicians so that they would recommend use of the mesh products to her and induce Shostrom

into consenting to implantation of the mesh products.  (ECF No. 44 at 15.)  Accordingly, a genuine issue of material fact exists as to whether Ethicon fraudulently concealed safety warnings from Shostrom's physicians, and the Court will deny Ethicon's request for summary judgment on Shostrom's fraudulent concealment claim.

## G.      Common Law Fraud (Count VI)

Ethicon cursorily argues that the Court should dismiss the fraud claim as duplicative of the failure to warn claim and because Shostrom cannot establish the elements of a fraudulent concealment claim.  (ECF No. 41 at 14.)  Ethicon recites the elements of a common law fraud claim and conclusorily states that Shostrom "has no evidence that Ethicon made representations to her intending that she act on them."  (*Id.*)  This is the extent of the argument on this claim.

In response, Shostrom points out that Ethicon makes no actual arguments regarding this claim.  (ECF No. 44 at 15.)  The Court agrees.  *See Hunter*, 739 F.3d at 495 (cursory argument not meaningfully developed by any analysis or citation is deemed waived).  Accordingly, the Court will deny Ethicon's request for summary judgment on Shostrom's common law fraud claim.

## H.      Violation of Consumer Protection Laws (Count XIII)

According to the Colorado Supreme Court,

> [t]o prove a private cause of action under the [Colorado Consumer Protection Act ("CCPA")], a plaintiff must show: (1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury.

*Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146–47 (Colo. 2003) (citing *Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998)).

In the Motion for Summary Judgment, Ethicon does not challenge the sufficiency of Shostrom's evidence to establish the elements of this claim.  (*See* ECF No. 41 at 14–15; ECF No. 44 at 16.)  Rather, Ethicon argues that Shostrom's consumer fraud claim should be dismissed as duplicative of the failure to warn claim[11] and because the CCPA excludes activity related to "[c]onduct in compliance with the orders or rules of, or a statute administered by, a federal, state, or local governmental agency."  (ECF No. 41 at 15 (citing Colo. Rev. Stat. § 6–1–106(1)(a)).)  As the mesh products are regulated by the FDA, Ethicon contends that dismissal is warranted.  (*Id.*)  For support, Ethicon cites one case, *Suarez v. United Van Lines, Inc.*, 791 F. Supp. 815 (D. Colo. 1992), but provides no explanatory parenthetical, much less any substantive analysis of this case.[12]  Ethicon develops no argument regarding the "in compliance" language in the exception, which it asserts bars Shostrom's claim.

In response, Shostrom argues that the CCPA only bars claims *in compliance* with the statute administered by a government agency—here, the FDA.  (ECF No. 44 at 16–17.)  Shostrom relies on *Showpiece Homes Corp. v. Assurance Co. of Am.*, 38 P.3d 47,

---

[11] As Shostrom points out, Ethicon provides no legal authority for this assertion.  (ECF No. 44 at 16.)  The Court finds that Ethicon's argument is conclusory and undeveloped, and thus considers it waived.

[12] Nonetheless, the Court reviewed *Suarez*.  *Suarez* did not concern medical devices. *See Suarez*, 791 F. Supp. at 817.  Rather, *Suarez* addressed the applicability of the Colorado Deceptive Trade Practices Act, Colo. Rev. Stat. § 6–1–105, *et seq.*, and the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 11707, to a shipment made from Florida.  *Id.*  There, the court briefly noted that the "Colorado Deceptive Trade Practices Act expressly excludes activity that falls under a statute administered by a federal, state, or local agency."  *Id.* (citing Colo. Rev. Stat. § 6–1–106(1)(a)).  Then, the court merely stated that "[t]he Carmack Amendment is such a statute."  *Id.*  There was no discussion of whether the activity was "in compliance" with the statute, which would aid the Court here.

56 (Colo. 2001), *as modified on denial of reh'g* (Jan. 11, 2002), in which the Colorado Supreme Court held "that section 6–1–106(1)(a) exempts only those actions that are 'in compliance' with other laws." The court explained that conduct amounting to deceptive or unfair trade practices, however, would not appear to be "in compliance" with other laws. *Id.* Reasoning that the mere existence of a regulatory body to oversee certain standards of an industry (there, the insurance industry) does not remove all acts and practices of that industry from the provisions of the CCPA, the court found that the General Assembly could not have intended to exclude from the protection of the CCPA the large number of industries that are subject to regulation. *Id.* at 56–57.

In the Court's view, while *Showpiece Homes* concerns the insurance industry and does not discuss medical devices or the FDA, the reasoning and ultimate conclusion of the Colorado Supreme Court in that case is dispositive here. Shostrom has asserted that Ethicon's "false and misleading representations to the public were not in compliance with any federal law," and as such, the exception does not bar the CCPA claim. (ECF No. 44 at 16–17.)

Accordingly, the Court will deny Ethicon's request for summary judgment on Shostrom's consumer fraud claim.

## I.     Constructive Fraud (Count VIII)

"Constructive fraud" has been defined as a breach of a legal or equitable duty that the law declares to be fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests, irrespective of the moral guilt of the perpetrator. *Barnett v. Elite Props. of Am., Inc.*, 252 P.3d 14, 23–24 (Colo. App. 2010) (citing 37 C.J.S. *Fraud* § 5 (2008)). Constructive fraud is an equitable theory of relief. *Id.* (citing *Trytko v. Hubbell, Inc.*, 28 F.3d 715, 728 (7th Cir.1994)).

> To establish a claim for constructive fraud, a plaintiff must show (1) the existence of a duty due to a relationship between the parties; (2) violation of the duty by making deceptive material representations of past or existing facts or remaining silent when a duty to speak exists; (3) reliance thereon by the complaining party; (4) injury to the complaining party proximately caused thereby; and (5) the gaining of an advantage by the party to be charged at the expense of the complaining party.

*Id.* (citation omitted).

Ethicon argues that the constructive fraud claim should be dismissed as duplicative of the failure to warn claim, and Shostrom has not provided any evidence to meet the elements of constructive fraud under Colorado law.  (ECF No. 41 at 16.) Further, Ethicon asserts that Shostrom did not purchase the device directly from Ethicon, so there is no relationship between the parties that would place any legal duty on Ethicon to Shostrom.  (*Id.*)  Accordingly, Ethicon argues the constructive fraud claim is without merit.  (*Id.*)  Ethicon cites no cases or evidence in support of its argument.

In response, Shostrom rejects Ethicon's contention that her constructive fraud claim should be dismissed as duplicative.  (ECF No. 44 at 17.)  In support, she incorporates her "responses from Sections VI(A) and VII above, which identify sufficient evidence for this claim."  (*Id.*)  She also incorporates "her above arguments demonstrating that Defendants have a legal duty not to defraud her implanting physicians."  (*Id.*)  This is the extent of Shostrom's argument for why the constructive fraud claim should survive summary judgment.

The Court disagrees, and it concludes that, if nothing else, Shostrom's constructive fraud claim is duplicative of her fraud-based claims.  Accordingly, the Court will grant Ethicon's request for summary judgment on Shostrom's constructive fraud

claim.

**J.     Unjust Enrichment (Count XV)**

Under Colorado law, "[t]he test for recovery under an unjust enrichment theory requires a showing that (1) at plaintiff's expense (2) defendant received a benefit (3) under circumstances that would make it unjust for defendant to retain the benefit without paying." *Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1007 (Colo. 2008) (citation omitted).  "The scope of the remedy is broad, cutting across both contract and tort law, with its application guided by the underlying principle of avoiding the unjust enrichment of one party at the expense of another." *Id.*

Ethicon argues that Shostrom's claim sounds not in contract or quasi-contract, but in tort, and as a result, the unjust enrichment claim is improper and should be dismissed.  (ECF No. 41 at 16.)  Shostrom disagrees, stating that Colorado law is clear that she need only demonstrate that Ethicon received a benefit from her under circumstances that would make it unjust for it to retain the benefit.  *See Robinson*, 179 P.3d at 1007.

While neither side briefs this issue well, the Court concludes that Ethicon has the better of the argument on this claim.  Similar to her constructive fraud claim, the Court finds the unjust enrichment claim to be duplicative of Shostrom's numerous other tort claims.  Accordingly, the Court will grant Ethicon's request for summary judgment on Shostrom's unjust enrichment claim.

**K.     Breach of Express Warranty (Count XI)**

To state a claim for breach of express warranty, the plaintiff must prove (1) the existence of a warranty, (2) breach of the warranty, (3) the breach proximately caused the losses claims as damages, and (4) defendant received timely notice of the breach.

*Scott v. Honeywell Int'l Inc.*, 2015 WL 1517527, at *3 (D. Colo. Mar. 30, 2015) (citing *Fiberglass Component Prod., Inc. v. Reichhold Chems., Inc.*, 983 F.Supp. 948, 953 (D. Colo. 1997; *Palmer*, 684 P.2d 187)). "When there is an express warranty, the question whether that warranty was breached is ordinarily one for the trier of fact." *Id.* (quoting *Graham Hydraulic Power, Inc. v. Stewart & Stevenson Power, Inc.*, 797 P.2d 835, 837 (Colo. App. 1990)).

In Colorado, "[w]here a tender has been accepted . . . [t]he buyer must within a reasonable time after he discovers or should have discovered any breach, notify the seller of breach or be barred from any remedy." *Palmer*, 684 P.2d at 205. "A person notifies or gives a notice or notification to another by taking such steps as may be reasonably required to inform the other in ordinary course whether or not such other actually comes to know of it. A person receives a notice or notification when: (a) It comes to his attention . . . ." *Id.* at 205–06 (internal quotation marks omitted).

The Colorado Supreme Court has explained that the notice requirement serves three purposes: (1) affording the seller an opportunity to correct any defect; (2) affording the seller an opportunity to prepare for negotiation and litigation; and (3) providing the seller a safeguard against stale claims being asserted after it is too late to investigate them. *Id.* (citing *Prutch v. Ford Motor Co.*, 618 P.2d 657, 661 (Colo. 1980)). In addition,

> [w]hile section 4–2–607(3)(a) provides for notification to the seller "[w]here a tender has been accepted," we construe the word "seller," as used in that section, to refer only to the immediate seller who tendered the goods to the buyer. *Goldstein v. G.D. Searle & Co.*, 62 Ill. App. 3d 344, 19 Ill. Dec. 208, 378 N.E.2d 1083 (1978). Under this construction, as long as the buyer has given notice of the defect to his or her immediate seller, no further notification to those distributors beyond the immediate seller is required. *Id.*; *see also Prutch*, 618 P.2d 657. From the perspective of the

> unsophisticated consumer, this interpretation of the statute
> promotes fairness by requiring the consumer to give notice
> only to the party with whom the consumer has dealt . . . .

*Id.*

Ethicon argues that "it is clear that [Shostrom] has failed to produce any evidence to prove the elements of her breach of express warranty claim.  Therefore, the claim is improper and should be dismissed."  (ECF No. 41 at 17.)  Ethicon offers no additional argument or citation to authority on this point.  The Court deems it waived and will address it no further.

Additionally, Ethicon argues that the claim fails "due to untimely notice of the actual breach."[13]  (*Id.*)  Specifically, Ethicon argues that "[c]omplaints filed between 17 and 33 months after the plaintiff learned of the alleged breach are unreasonable as a matter of law."  (ECF No. 41 at 17.)  Despite this general argument, Ethicon provides the Court with no specific dates or evidentiary citations to examine, such as the date Shostrom allegedly learned of the breach or the date on which she notified someone (whoever that might have been) of the breach.  (*Id.* at 17–18.)

In response, Shostrom notes that Ethicon only contests the viability of the notice element of the claim.  (ECF No. 44 at 18.)  Shostrom states that "[o]n July 29, 2011, *within days of first experiencing an erosion*, [she] presented to Dr. Goodman, who is considered her immediate seller because he implanted the mesh devices."  (*Id.* (emphasis in original).)  Shostrom cites no evidence to support this assertion.  Instead, she merely relies on *Palmer* for the proposition that notice is met "as long as the buyer

---

[13] Because Ethicon does not dispute the sufficiency of the claim as to the other elements of a breach of express warranty claim, the Court will only address the notice element.  (*See* ECF No. 41 at 17.)

has given notice of the defect to his or her immediate seller, no further notification to those distributors beyond the immediate seller is required." (*Id.* (citing *Palmer*, 684 P.2d at 206).)

Yet again, the Court finds the briefing by both parties on this score to be woefully deficient.  Ethicon's argument relies on the date Shostrom filed the Complaint; Shostrom relies on the date she notified her physician of her injury.  Neither side provides evidentiary support.  However, Shostrom appears to have the better argument under *Palmer*.  Further, Ethicon does not contest Shostrom's assertion in its reply.  (*See* ECF No. 46.)  Thus, the Court concludes that Shostrom has at a minimum raised a question of fact as to whether the notice was sufficient, and notes that the question of whether the warranty was breached is ordinarily a question of fact for the jury.  *See Graham Hydraulic Power*, 797 P.2d at 837.

Accordingly, the Court will deny Ethicon's request for summary judgment on the breach of express warranty claim.

## L.   Breach of Implied Warranty of Merchantability (Count XII)[14]

Under Colorado law, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."

---

[14] It is unclear under which section of Colorado's statute concerning implied warranties Shostrom brings her breach of implied warranty claim.  Section 314 concerns "Implied warranty—merchantability—usage of trade."  Colo. Rev. Stat § 4–2–314.  Section 315 concerns "Implied warranty—fitness for particular purpose."  *Id.* § 4–2–315.

The Short Form Complaint states "Count XII – Breach of Implied Warranty."  (ECF No. 1 at 4.)  In her response, Shostrom appears to only rely on cites Colorado Revised Statute § 4–2–314.  (ECF No. 44 at 19.)  In the Motion for Summary Judgment, Ethicon cites Colorado Revised Statute §§ 4–2–314 & 315.  (ECF No. 41 at 18.)

Before trial, Shostrom should clarify for the Court the basis for her implied warranty claim.

Colo. Rev. Stat. § 4–2–314(1).  The statute further provides that "[g]oods to be merchantable must be at least . . . fit for the ordinary purposes for which such goods are used," "adequately contained, packaged, and labeled as the agreement may require," and "[c]onform to the promises or affirmations of fact made on the container or label if any."  *Id.* § 4–2–314(2)(c), (e), (f).

Ethicon argues that Shostrom "has not provided any proof of a defect, despite the law in Colorado that '[t]here can be no recovery under theories of breach of implied warranty or strict liability without proof of a defect.'"  (ECF No. 41 at 18 (quoting *Baird v. Power Rental Equip., Inc.*, 533 P.2d 941, 943 (Colo. App. 1975)).  On this basis, Ethicon contends that Shostrom's breach of implied warranty claim should be dismissed.  Ethicon provides no further argument or explanation of its position on this point.

Shostrom responds that she has presented—and Ethicon ignores—extensive evidence that the mesh products were unreasonably dangerous, and therefore defective, due to: (1) inadequate warnings; (2) design defects; and (3) manufacturing defects.  (ECF No. 44 at 19.)  Ethicon does not respond to this argument in its reply brief.  (*See generally* ECF No. 46.)  The Court agrees that Shostrom has at least presented a genuine issue of material fact that the mesh products were unreasonably dangerous and therefore defective, such that denial of Ethicon's motion on this basis is warranted.

In addition, Ethicon argues that Shostrom "improperly raised the breach of warranty claim, and could have only raised the strict liability for misrepresentation claim under Colorado law."  (ECF No. 41 at 18.)  Ethicon reasons that Colorado has applied Section 402B of the Restatement (Second) of Torts to permit an action in strict liability

for physical harm to the consumer, resulting from a misrepresentation to the public of the character or quality of the chattel sold, even though the misrepresentation is an innocent one and is not made fraudulently or negligently.  (*Id.* (citing *Am. Safety Equip. Corp. v. Winkler*, 640 P.2d 216, 219 (Colo. 1982).)  Ethicon does not further develop this argument and explain how this statement of law applies to the instant case.

Shostrom responds that this statement of Colorado law is incorrect, and nonetheless, *American Safety Equipment* does not stand for the ultimate conclusion Ethicon draws.  (ECF No. 44 at 19.)  Ethicon does not respond to Shostrom's arguments in its reply brief.  (*See generally* ECF No. 46.)

First, while Ethicon accurately restates the language in *American Safety Equipment*, the portion of the case that Ethicon cites for support does not appear to stand for the proposition Ethicon asserts.  (*See* ECF No. 44 at 19 (explaining why Ethicon has incorrectly interpreted *American Safety Equipment*).)  Regardless, the Court finds that Ethicon has failed to adequately develop this conclusory argument, and the Court considers it waived.  *See Hunter*, 739 F.3d at  495 (cursory argument not meaningfully developed by any analysis or citation is deemed waived).  The Court will deny Ethicon's request for summary judgment as to Shostrom's breach of implied warranty claim.

## V. CONCLUSION

For the reasons set forth above, the Court ORDERS that:

Ethicon's Motion for Summary Judgment (ECF No. 40) is GRANTED in part, DENIED in part, and DEFERRED in part, as follows:

1.  Shostrom's claims for Strict Liability – Defective Product (Count IV);

Constructive Fraud (Count VIII); Unjust Enrichment (Count XV); and Loss of Consortium (Count XVI) are DISMISSED with prejudice;

2. The Court DEFERS ruling on Shostrom's claims for Strict Liability – Design Defect (Count V) and Strict Liability –Manufacturing Defect (Count II) until it rules on an amended Rule 702 motion; and

3. The Motion for Summary Judgment is DENIED as to Shostrom's remaining claims.

Dated this 1st day of March, 2021.

BY THE COURT:

William J. Martinez
United States District Judge