**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 20-cv-1933-WJM-STV

LEAH R. SHOSTROM,

     Plaintiff,

v.

ETHICON, INC., and
JOHNSON & JOHNSON,

     Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION *IN LIMINE* TO LIMIT PLAINTIFF'S GENERAL EXPERTS ON ISSUES
RESERVED BY THE MDL COURT**

---

Before the Court is Defendants Ethicon, Inc. and Johnson & Johnson's (jointly, "Ethicon") Motion *In Limine* to Limit Plaintiff's General Experts on Issues Reserved by the MDL Court ("Motion"). (ECF No. 126.) Plaintiff Leah R. Shostrom responded in opposition (ECF No. 129), and Ethicon replied (ECF No. 131).

For the following reasons, the Motion is granted in part and denied in part.

## I. LEGAL STANDARDS

A district court must act as a "gatekeeper" in admitting or excluding expert testimony. *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232 (10th Cir. 2005). Expert opinion testimony is admissible if it is relevant and reliable. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589, 594–95 (1993). The opinions are relevant if they would "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. They are reliable if: (1) the expert is qualified "by knowledge,

skill, experience, training, or education," (2) his opinions are "based upon sufficient facts or data," and (3) they are "the product of reliable principles and methods."  *Id.*  The proponent of expert testimony has the burden to show that the testimony is admissible.  *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).

Federal Rule of Evidence 401 provides that evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.

Federal Rule of Evidence 402 provides that relevant evidence is admissible unless any of the following provides otherwise, including the United States Constitution; a federal statute; these rules; or other rules prescribed by the Supreme Court.  Further, Rule 402 provides that irrelevant evidence is not admissible.

Federal Rule of Evidence 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

## II. ANALYSIS

The Court presumes the parties' familiarity with the background and procedural history of this case, and incorporates by reference the Background section from its Order Granting In Part, Denying In Part, and Deferring In Part Ethicon's Motion for Summary Judgment.  (ECF No. 100 at 4–6.)

## A.   Bruce Rosenzweig, M.D.

Dr. Rosenzweig is a surgeon in the field of urogynecology and pelvic surgery. Shostrom states that she will call Dr. Rosenzweig as a general causation expert for the TVT-Secur device and as a specific causation expert.  (ECF No. 129 at 4.)

2

As a preliminary matter, Ethicon states that Shostrom has not served a Prolift general report from Dr. Rosenzweig, so he should not be allowed to express general opinions about the Prolift except insofar as they are properly set forth in his case-specific report.  (ECF No. 126 at 2 n.3 (citing *Bayless v. Bos. Sci.*, 2020 WL 10058191, at *3 (M.D. Fla. Dec. 7, 2020) (precluding Dr. Rosenzweig from offering general opinions about a device absent a general report)).).

In her response, Shostrom states that Dr. Rosenzweig will be called as a general causation expert for the TVT-Secur device and as a specific causation expert.  (ECF No. 129 at 4.)  Based on Shostrom's representations, it appears as though Shostrom does not intend for Dr. Rosenzweig to offer general opinions about the Prolift, and thus, the Court denies Ethicon's request as moot.

1.   The Court should preclude Dr. Rosenzweig from testifying that non-mesh surgical procedures are safer alternative designs.

Ethicon argues that the Court should preclude Dr. Rosenzweig from testifying that traditional non-mesh surgeries (such as the Burch procedure) and autologous and allograft slings are safer alternative designs to the TVT-Secur.  (ECF No. 126 at 2.)  Additionally, Ethicon argues that these non-mesh surgeries are not alternative designs to the TVT-Secur, but are entirely different surgical procedures.  (*Id.*)

In its Order Granting In Part and Denying In Part Ethicon's Motion to Limit the Case-Specific Testimony of Bruce Rosenzweig, M.D. ("Order on Motion to Limit"), the Court addressed this same argument; therefore, here, the Court incorporates by reference its analysis and its conclusions.  (ECF No. 139 at 4–10.)  In the Order on Motion to Limit, the Court concluded: "as a matter of law that use of sutures, including delayed absorbable sutures like PDS, in a colposuspension procedure like the Burch,

and the use of sutures, including delayed absorbable sutures like PDS, in a uterosacral ligament suspension and a sacrospinous fixation, or an anterior colporrhaphy or a sacrocolpopexy, are not alternative products to the TVT-S or Prolift." (*Id.* at 8–9.) Accordingly, the Court excluded "Dr. Rosenzweig's opinions about these procedures as a safer alternative to the TVT-S or Prolift, to the extent Shostrom would offer them as evidence of the availability of substitute products or devices which would meet the same need and not be as unsafe as Defendants' devices at issue here." (*Id.* at 9.) Further, as the Court ruled in the Order on Motion to Limit, "Dr. Rosenzweig may opine that autologous slings and allografts are substitute products under *Armentrout* factor three." (*Id.* at 10.)

Therefore, to the extent stated above, the Court grants in part and denies in part this portion of the Motion.

2.    <u>Dr. Rosenzweig should be precluded from criticizing the cut of TVT-Secur mesh.</u>

In the Motion, Ethicon explains that it initially cut the Prolene mesh in its products with a machine.  (ECF No. 126 at 4.)  By contrast, the Prolene mesh in TVT-Secur devices was cut with a laser.  (*Id.*)  According to Ethicon, Dr. Rosenzweig has criticized both ways in which the mesh is cut.  (*Id.*)  When hired in a case involving laser-cut mesh, he opines that the mesh is too stiff and that this stiffness renders the mesh more dangerous than mechanically-cut mesh.  (*Id.*)  However, Ethicon argues that when Dr. Rosenzweig is hired in a case involving mechanically-cut mesh, he opines that the mesh can rope, curl, and fray and that this renders the mechanically-cut mesh more dangerous than laser-cut mesh.  (*Id.*)

For support, Ethicon argues that mechanically-cut TVT-Secur mesh was not

even an available option at the time of Shostrom's implant.  (*Id.*)  As Ethicon points out, "'[t]o recover' for a claim of negligent design in Colorado, 'a plaintiff must show not only that the alternative is safer but that it was practicable and available at the time the allegedly dangerous product was sold.'"  *Wood v. Am. Med. Sys. Inc.*, 2021 WL 1178547, at *10 (D. Colo. Mar. 26, 2021) (quoting *Staley v. Bridgestone/Firestone, Inc.*, 106 F.3d 1504, 1511 (10th Cir. 1997)).  Dr. Rosenzweig has admitted that it was impossible for mechanically-cut mesh to be placed in a TVT-Secur device and that it was not an available option.  (*Id.*)  Additionally, neither Dr. Rosenzweig nor any other expert has testified that a TVT-Secur with differently cut mesh (whether mechanically cut or otherwise) would have been safer for Shostrom.  (*Id.*)  At his deposition, Dr. Rosenzweig testified that the only way to make a TVT-Secur is with laser-cut mesh.[1] (ECF No. 131 at 4.)  Thus, Ethicon asserts that the Court should preclude Dr. Rosenzweig from criticizing the manner in which the mesh was cut in the TVT-Secur, when he has not identified how it could have been cut more safely.  (ECF No. 126 at 5.)

In response, Shostrom argues that Ethicon's argument belies the fact that Ethicon used mechanically cut mesh in various iterations of its other TVT products before the TVT-Secur was designed and presents no reason it could not have made that design choice with the TVT-Secur.  (ECF No. 129 at 10–11.)  Shostrom does not address Ethicon's argument that Dr. Rosenzweig's testimony on this point should be excluded because no expert in this case claims any of Shostrom's injuries would have been avoided if the mesh had been cut differently.  (*See* ECF No. 129.)

---

[1] It appears as though Ethicon did not include the pages of the deposition in which this testimony appears.  (ECF Nos. 126-3, 126-5.)  However, the Court relies on the good faith representation of Ethicon's counsel that it did not misstate this testimony.  In future briefing, both parties should be careful to include all relevant exhibits for the Court's review.

The Court finds Shostrom's lack of response dispositive.  Because none of her experts will opine that her injuries would have been avoided or that the mesh would have been safer if it had been cut differently, testimony on this point appears irrelevant. Moreover, it could be confusing to a jury.  *See* Fed. R. Evid. 403.

Therefore, the Court grants this portion of the Motion.  Dr. Rosenzweig may not offer testimony criticizing the cut of TVT-Secur mesh.

3.    The Court should preclude Dr. Rosenzweig from testifying that a TVT-Secur with a lighter weight mesh would be a safer alternative for the surgical treatment of stress urinary incontinence ("SUI").

In its Order Granting Defendants' Motion for Leave to File Reserved-Issue Briefing Regarding the Parties' Pending General *Daubert* Motions Filed in the MDL, the Court stated that it "will adopt the relevant MDL orders on the parties' experts."  (ECF No. 123 at 5.)

Here, Shostrom points out, and Ethicon does not dispute, that Judge Goodwin has already decided this issue and denied Ethicon's challenge to Dr. Rosenzweig's opinion regarding the instant issue.  (ECF No. 129 at 11–12.)  However, because in so ruling, Judge Goodwin did not have the benefit of knowing which state law would apply, in the interests of justice, the Court nonetheless considers Ethicon's arguments now.  In doing so, the Court construes this portion of the Motion as a motion for reconsideration of the Court's order adopting the relevant MDL orders.

Dr. Rosenzweig suggests that a TVT-Secur with a lighter weight and larger pore mesh, such as Ultrapro, would have been safer for the surgical treatment of SUI.  (ECF No. 126 at 5 (citing ECF No. 126-1 at 77).)  Ethicon argues that this testimony should be excluded because the FDA has never approved an Ultrapro mesh device for the surgical treatment of SUI, and there is no other device available in the United States

6

with mesh lighter than the Prolene mesh used in TVT-Secur.  (ECF No. 126 at 5.)

Thus, it is undisputed that no products using these materials have been marketed in the

United States.  (*Id.*)  And therefore, according to Ethicon, Dr. Rosenzweig's testimony

on this point is inadmissible under Colorado law because the alternative was not

"practicable and available" at the time of Shostrom's implant.  (*Id.*)

In *Wood*, the court precluded Dr. Rosenzweig from offering these same opinions,

because, among other things, this type of mesh is not available to American patients.

*Wood*, 2021 WL 1178547, at *10.  Colorado requires that a plaintiff show "not only that

the alternative is safer but that it was practicable and available at the time the allegedly

dangerous product was sold."  *Id.* at *10.  The Court finds *Wood* persuasive and will

follow its reasoning.

Shostrom offers no substantive argument on these issues, other than to state

that Judge Goodwin already ruled on this issue and to request that the Court deny this

portion of the Motion.  (ECF No. 129 at 11.)  The Court denies Shostrom's request to file

a full response to this issue and an affirmative motion against Ethicon's experts.[2]  (ECF

No. 129 at 12.)

Therefore, to the extent the Court adopted Judge Goodwin's aforementioned

denial of Ethicon's challenge to this testimony (ECF No. 123 at 6), the Court hereby

vacates that decision.  The Court grants the construed motion for reconsideration and

grants this portion of the Motion.  Dr. Rosenzweig is precluded from testifying that a

---

[2] Shostrom had the opportunity to file a fulsome response in this round of briefing and chose not to do so.  To that end, she also had the opportunity to file her own motion *in limine* in connection with expert issues reserved by the MDL court and chose not to do so.  There has been more than ample motion practice and briefing in this case, and the Court declines to accept more last-minute briefing from the parties.

TVT-Secur with a lighter weight mesh would be a safer alternative for the surgical treatment of SUI.

    4.    <u>Dr. Rosenzweig should not be allowed to critique Ethicon's physician training and handling of adverse event reports.</u>

Ethicon argues that Dr. Rosenzweig should not be allowed to critique Ethicon's physician training and handling of adverse event reports.  (ECF No. 126 at 7–8.)  In her response, Shostrom states that in the MDL briefing, plaintiffs confirmed that Dr. Rosenzweig will not opine about adverse events, training, or legal conclusions.  (ECF No. 129 at 12.)  In the reply, Ethicon states that the parties appear to agree that Dr. Rosenzweig will not criticize Ethicon's training of physicians or handling of adverse event reports.  (ECF No. 131 at 5.)

Based on the representations of the parties, the Court denies this portion of the Motion as moot.

**B.**    **Alan Garely, M.D.[3]**

Shostrom has designated Dr. Garely, who is board certified in Obstetrics and Gynecology and Female Pelvic Medicine and Reconstructive Surgery, as a general causation expert to provide opinions about Ethicon's Prolift device, which is used to treat pelvic organ prolapse.  (ECF No. 126-8.)

---

[3] Ethicon states that "[t]he MDL Court ruled Garely is precluded from: (1) opining about what information should be included in the product warnings, *In re: Ethicon*, 2016 WL 4582209, at *3 (ECF No. 63-11); (2) opining on regulatory issues, including what information was or was not shared with the FDA, compliance with FDA labeling requirements, and adverse event reporting, *id.* at *4; (3) speculating about Ethicon's knowledge and state of mind, *id.* at *5; and (4) providing a narrative summary of Ethicon's internal documents, *id.*  The court also limited Dr. Garely's warnings opinions to testimony "about the specific risks of implanting mesh and whether those risks appeared on the relevant IFU."  *Id.* at *3.  The court denied Ethicon's motion (1) as moot on the issue of degradation because the MDL Plaintiff advised that Garely would not offer degradation opinions, *id.* at *3; and (2) concerning opinions on "mesh's reaction to and effect on the human body," *id.*  (ECF No. 126 at 8 n.7.)

Ethicon states that Shostrom did not serve a general report on the TVT-Secur from Dr. Garely, and therefore, it objects to Dr. Garely offering any opinions at trial pertaining to the TVT-Secur as violative of Federal Rule of Civil Procedure 26.  (ECF No. 126 at 8 n.6.)  Because Shostrom states that she has designated Dr. Garely to provide opinions about the Prolift device, and not the TVT-Secur device, the Court relies on  Shostrom's representation and denies this portion of the Motion as moot.

1.  <u>Dr. Garely Should Not Offer Opinions Regarding Alleged Safer Alternative Designs.</u>

    a.  *Native tissue repair or non-surgical treatment*

Ethicon argues that Dr. Garely's opinions on native tissue repairs, Kegel exercises, and pessaries[4] [5] address alternate methods of treatment, not alternative product designs, and they should be precluded for the same reasons as Dr. Rosenzweig's similar opinions.  (ECF No. 126 at 10.)  Ethicon does not further develop this argument and refers the Court to its arguments concerning Dr. Rosenzweig.  (*Id.*) Shostrom's response is equally unhelpful, merely pointing out that Ethicon did not develop this argument independently and asking that the Court deny this portion of the Motion.  (ECF No. 129 at 14.)

---

[4] Yet again, the parties simply assume the Court is as well-versed as they are in the language of pelvic mesh litigation.  In prior Orders, the Court has cautioned the parties against taking such a lackadaisical approach to briefing in this case and finds it necessary again.  (*See* ECF No. 100.)  Here, the parties do not bother to define the medical term "pessary."  In later briefing, they do not bother to explain what "design controls" entail.  Going forward, the Court puts the parties on notice that their briefing will be subject to being summarily stricken if they fail to sufficiently explain the issues such that the Court can rule on them efficiently.

[5] According to Brigham and Women's Hospital, Urogynecology, Pessary, "[a] pessary is a soft, flexible device that is placed in the vagina to help support the bladder, vagina, uterus, and/or rectum. Pessaries are made in many different shapes and sizes.  A pessary is a non-surgical way to treat pelvic organ prolapse and sometimes incontinence."  *See* Brigham and Women's Hospital, https://www.brighamandwomens.org/obgyn/urogynecology/forms-and-education-materials/pessary-instructions (last visited on March 24, 2022).

The Court will follow its reasoning set forth in its Order on Motion to Limit, explained above with respect to Dr. Rosenzweig's opinions.  (ECF No. 139 at 8.)  As it did in connection with Dr. Rosenzweig, the Court denies this portion of the Motion and permits Dr. Garely to offer opinions regarding native tissue repairs.

However, the Court grants that portion of the Motion related to Kegel exercises.  The Court excludes Dr. Garely's opinions regarding Kegel exercises,[6] as it is not clear how an exercise is relevant to purported defects in Ethicon's medical device, the Prolift.

With respect to evidence regarding the use of a pessary, the Court grants this portion of the Motion, and excludes Dr. Garely's opinions on the use of the pessary.  While the Court permitted the introduction of evidence of the autologous sling and allografts, which use non-synthetic materials, as alternative substitute products, the Court reasoned that they "are sufficiently similar to the synthetic mesh products at issue to render Dr. Rosenzweig's opinions on them relevant."  (ECF No. 139 at 10.)  However, in his expert report, Dr. Garely does not provide any explanation as to why the pessary is similar to the Prolift such that it is an appropriate alternative to the Prolift, nor does Shostrom in her response.  (*See* ECF No. 126-8 at 30; ECF No. 129.)

  b. *Mesh without arms or trocar placement*

The Court has considered both parties' arguments on this issue.  (ECF No. 126 at 10–11; ECF No. 129 at 14–15.)

The Court preliminarily denies without prejudice this portion of the Motion with

---

[6] According to the Mayo Clinic, "Kegel exercises strengthen the pelvic floor muscles, which support the uterus, bladder, small intestine and rectum.  You can do Kegel exercises, also known as pelvic floor muscle training, just about anytime."  *See* Mayo Clinic, Healthy Lifestyle, Women's Health, https://www.mayoclinic.org/healthy-lifestyle/womens-health/in-depth/kegel-exercises/art-20045283 (last visited on March 24, 2022).

respect to Dr. Garely and will allow him to offer opinions regarding the elimination alternatives, also referred to by Ethicon as mesh without arms or trocar placement. Ethicon may reassert these arguments at trial if the evidence admitted makes it appropriate to do so.  The Court reserves making its final ruling as to this expert's opinion on this issue based on his testimony at trial.

    c. *Biologic materials*

   The Court will follow the reasoning set forth in its Order on Motion to Limit, explained above with respect to Dr. Rosenzweig's opinions.  (ECF No. 139 at 8.)  As it did in connection with Dr. Rosenzweig, the Court will permit Dr. Garely to offer opinions regarding the use of biologic materials for prolapse repair.  Therefore, the Court denies this portion of the Motion.

    d. *Alternative meshes*

   Ethicon seeks to exclude Dr. Garely's opinions regarding polyvinylidene fluoride/PVDF/Pronova as safer alternatives to the Prolift, arguing that like Dr. Rosenzweig's Ultrapro opinions, Dr. Garely's PVDF opinions fail because that mesh was not available to Shostrom.  (ECF No. 126 at 12.)  Dr. Garely testified that such mesh is not commercially available and that he believes that the FDA has never cleared or approved such mesh for treatment of pelvic organ prolapse.  (ECF No. 126-9 at 9.)  Therefore, these alternatives are not feasible alternative designs where they could not have been used in lieu of Prolift at the time of Shostrom's surgery.  (ECF No. 126 at 12.)  *See Wood*, 2021 WL 1178547, at *10 (precluding expert opinion "about Dynamesh [made of PVDF]" because it was not "available to American patients").

   For similar reasons as the Court excluded Dr. Rosenzweig's opinions regarding lighter weight mesh, the Court grants this portion of the motion and excludes Dr.

Garely's opinions regarding polyvinylidene fluoride/PVDF/Pronova as safer alternatives

to the Prolift.

    2.    <u>Dr. Garely's Warnings Opinions Should Be Excluded.</u>

    Ethicon seeks to exclude Dr. Garely's purportedly "unsupported statements

concerning product warnings," arguing that assertions with no reliable support should be

excluded.  (ECF No. 126 at 14.)  In response, Shostrom points out that Judge Goodwin

addressed similar arguments in the MDL.  (ECF No. 129 at 17.)  In relevant part, Judge

Goodwin found:

> As to the opinions [of Dr. Garely] that are not accompanied
> by citations, I am not convinced that the lack of copious
> citations renders an opinion unreliable.  But the lack of
> citations makes it difficult for me to assess the reliability of
> these opinions.  Without sufficient information to draw the
> fine line between reliable and unreliable expert testimony, I
> RESERVE ruling until further testimony may be offered and
> evaluated firsthand at trial.

(ECF No. 63-11 at 7–8.)  The Court agrees with Judge Goodwin's analysis and

concludes that such arguments are more appropriately raised at trial.  Therefore, the

Court denies this portion of the Motion, without prejudice, to Ethicon reasserting this

argument at trial, if appropriate in light of the evidence adduced at trial .

    3.    <u>Dr. Garely Is Not Qualified to Opine On Product Design and Design
Controls.</u>

    Ethicon argues that Dr. Garely is not qualified to opine on product design and

design controls, as he has "no medical device design expertise that qualifies him to

opine that the Prolift is defectively designed."  (ECF No. 126 at 14 (alterations and

quotation marks omitted) (citing ECF No. 126-8 at 7).)  Ethicon underscores that Dr.

Garely admitted in his deposition that he is not an expert in FDA regulations on design

controls.  (*Id.*)

In response, Shostrom asserts that Ethicon has failed to address the *Armentrout* factors for a design defect claim, "such that it is unclear what exactly Ethicon is arguing here."  (ECF No. 129 at 18.)  Shostrom states that beyond challenging Dr. Garely's lack of expertise in FDA regulations, which is irrelevant because the MDL court excluded it, Ethicon does not otherwise challenge Dr. Garely's qualifications.  (*Id.*)  Without explaining how Dr. Garely *is* qualified to opine as to product design and design controls, Shostrom merely points out that Ethicon consulted with Dr. Garely regarding similar mesh products.  (*Id.*)

The Court finds both parties' arguments on this point decidedly unhelpful.  It is of particular concern that it does not appear that they even know what the other is arguing on this issue.  (*See* ECF No. 129 at 17–18 (Shostrom states that "it is unclear what exactly Ethicon is arguing here.").)

In reserving ruling on this issue, Judge Goodwin opined that "because the scope of relevant testimony may vary according to differences in state products liability law, I RESERVE ruling on such matters until they may be evaluated in proper context at a hearing before the trial court before or at trial."  *In re: Ethicon Inc.*, No. MDL 2327, 2016 WL 4582215, at *5 (S.D.W. Va. Sept. 1, 2016).  Therefore, it appears as though the burden is on Shostrom to demonstrate why, under Colorado law, Dr. Garely is qualified to opine on this topic.  The Court sees no analysis of Colorado law, beyond a vague reference to the *Armentrout* factors, which would demonstrate that Dr. Garely is qualified to opine on this topic.

Therefore, the Court grants this portion of the Motion.  Dr. Garely may not opine

on product design and design controls.

## C.     R. Brian Raybon, M.D.[7]

Shostrom disclosed Dr. Raybon, who is a specialist in female pelvic medicine and reconstructive surgery, as a general causation expert regarding Prolift.  (ECF No. 126-10.)

Ethicon states that Shostrom did not serve a general report on TVT-Secur from Dr. Raybon, and therefore, it objects to Dr. Raybon offering any opinions at trial pertaining to the TVT-Secur device as violative of Federal Rule of Civil Procedure 26. (ECF No. 126 at 15 n.9.)  Because Shostrom does not dispute in her response that she has designated Dr. Raybon to provide opinions about the Prolift device, not the TVT-Secur device, the Court relies on Shostrom's implied representation and denies this portion of the Motion as moot.

> 1.     <u>Dr. Raybon's Opinion on Surgeon Training is Irrelevant, Speculative, and Misleading.</u>

In reserving ruling on this issue, Judge Goodwin stated:

> The plaintiffs respond by pointing out that Ethicon has consistently raised the defense that complications are actually attributable to surgeon error, not the design of the product.  Thus, the plaintiffs' offer of rebuttal testimony on these points would appear to be relevant.  At this stage in the proceedings, however, I find that this issue would be better resolved in the actual context in which it may arise during trial.  Accordingly, I RESERVE ruling on these matters.

---

[7] Ethicon states that the MDL Court ruled on challenges to Dr. Raybon's opinions in Wave 1 and adopted that order in other waves.  In *re: Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, No. 2327, 2016 WL 4536876 (S.D.W. Va. Aug. 30, 2016) ("MDL Wave 1 Raybon Order").  Consistent with the MDL Court's Wave 1 Order, Dr. Raybon should not be allowed to: (1) use the phrase "unacceptable risk" when discussing clinical studies; (2) offer opinions about complications Plaintiff did not experience; (3) offer opinions about what Prolift's instructions for use ("IFU") should or should not contain; or (4) offer opinions that are "solely a conduit for corporate information."  *Id.*

(ECF No. 65-2 at 8.)

Ethicon argues that Dr. Raybon's opinions on the training and competence of physicians to implant Prolift do not fit the facts of the case and should be excluded under *Daubert*.  (ECF No. 126 at 16.)  In advancing this argument, Ethicon notes that "neither Plaintiff's case-specific expert nor Ethicon's expert has opined that the treatment by Dr. [Kaea] Beresford, the Prolift implanting surgeon, fell below the standard of care."  (*Id.*)

In response, Shostrom argues that when physician error is asserted and "when the facts show that Ethicon made no effort to determine physician skill and experience before allowing surgeons to implant these products, it is appropriate and necessary for Ms. Shostrom to be allowed to respond with expert testimony regarding this subject matter."  (ECF No. 129 at 18–19.)  Further, Shostrom argues that "[s]hould Ethicon raise any issues regarding the skill or experience of the physicians who treated Ms. Shostrom, Dr. Raybon should be allowed to offer his opinion regarding the inadequacy of Ethicon's physician selection and training."  (*Id.* at 19.)

In its reply, Ethicon states that "[g]iven that no expert here has suggested that Plaintiff's implanting surgeon, Dr. Kaea Beresford, was improperly trained or that Plaintiff's treatment fell below the standard of care, Plaintiff cannot explain how the level of training that Ethicon may have provided to *other physicians* has any relevance in this case."  (ECF No. 131 at 9 (emphasis in original).)

The Court agrees with Ethicon.  Unless Ethicon challenges Shostrom's implanting surgeon as improperly trained, which it has represented it will not do at trial, it is unclear how Ethicon's training of other physicians is relevant.  Moreover, there is

the added danger that such testimony could confuse the jury.  The Court also agrees with the MDL court's statement that such opinions are irrelevant because they say "little about the design of [the mesh] or the adequacy of its warnings*." Wise v. C.R. Bard, Inc.*, 2015 WL 521202, at *13 (S.D. W.Va. Feb. 7, 2015); *Sanchez v. Boston Sci. Corp.*, 2014 WL 4851989, at *32 (S.D. W.Va. Sept. 29, 2014) (excluding an expert's opinion on physician training because it "primarily focus[es] on the competence of other physicians, which is irrelevant and will not assist the jury in determining the issues in this case"). Therefore, the Court grants this portion of the Motion.  Dr. Raybon may not testify as to physician training, unless Ethicon opens the door at trial.

> 2. <u>Dr. Raybon's Safer Alternative Designs Opinions Are Not Supported by Facts or Data.</u>

Ethicon seeks to exclude Dr. Raybon's opinions regarding purportedly safer alternative designs, including use of PVDF, elimination of permanent mesh arms, elimination of blind trocar passes, and introduction of stress shielding.  (ECF No. 126 at 17.)

Regarding the use of PVDF, the Court grants this portion of the Motion, relying on the reasons stated above in connection with Dr. Garely's opinions on PVDF and similar meshes.

Regarding the elimination of permanent mesh arms and blind trocar passes, the Court preliminarily denies this portion of the Motion without prejudice, to Ethicon reasserting its arguments at trial, if appropriate in the context of the record evidence at trial.

Regarding the introduction of stress shielding, the Court finds that the parties have not sufficiently explained to the Court what stress shielding is, precluding the Court

from ruling on this issue.  Therefore, the Court preliminarily denies the portion of the

Motion related to stress shielding, without prejudice to Ethicon raising the issue again at

trial in the event the facts and the law warrant it

>    3.    Dr. Raybon's Opinions Concerning Ethicon's State of Mind Should Be
>          Excluded.

Ethicon seeks to exclude Dr. Raybon's opinions concerning Ethicon's state of

mind.  (ECF No. 126 at 19.)  In response, Shostrom states that she "agrees that Dr.

Raybon will not offer opinions as to Ethicon's state of mind, and Judge Goodwin has

already excluded this type of testimony."  (ECF No. 129 at 20 (citing ECF No. 65-2 at

12–13).)

However, Shostrom argues that Dr. Raybon should be permitted to discuss

internal company documents to the extent that those documents form the basis of and

support his opinions.[8]  (*Id.* at 21.)

In one pelvic mesh lawsuit, Judge Goodwin generally explained that

> [a]lthough an expert may testify about his or her review of
> internal corporate documents solely for the purpose of
> explaining the basis for his or her opinions—assuming the
> opinions are otherwise admissible—a party's knowledge,
> state of mind, or other matters related to corporate conduct
> and ethics are not appropriate subjects of expert testimony
> because opinions on these matters will not assist the jury.

*Tyree v. Bos. Sci. Corp.*, 54 F. Supp. 3d 501, 517–18 (S.D.W. Va. 2014), *as amended*

(Oct. 29, 2014).  The Court will follow Judge Goodwin's reasoning, as stated above.

Therefore, that portion of the Motion seeking to preclude Dr. Raybon from

testifying about Ethicon's state of mind is denied as moot.  However, Dr. Raybon may

---

[8] Yet again, Shostrom appears to be attempting to expand the scope of the issues.  The Court has already warned her against doing so (ECF No. 139 at 5 n.2), and any attempts to do so in the future are subject to being summarily stricken or denied.

testify about his review of internal corporate documents solely for the purpose of explaining the basis for his opinions, assuming the opinions are otherwise admissible. To the extent the Motion seeks to exclude the latter type of testimony, that portion of the Motion is denied without prejudice. Ethicon may seek to exclude such testimony at trial if it has an alternative basis for arguing it is inadmissible.

**D.   Daniel Elliott, M.D.**

Shostrom designated Dr. Elliott to provide general opinions about both Prolift and TVT-Secur.[9]  (ECF Nos. 126-12, 126-13.)

1.   <u>Dr. Elliott should be precluded from testifying that non-synthetic mesh procedures are a safer alternative design.</u>

Ethicon seeks to preclude Dr. Elliott from testifying that "non-mesh surgeries are safer alternative designs to Prolift and TVT-Secur." (ECF No. 126 at 20.)  Other than encouraging the Court to limit these opinions consistent with its limitation of Drs. Rosenzweig and Garely's opinions, Ethicon provides no further argument on this point. (*Id.*)

The Court is "not charged with making the parties' arguments for them."  *Meyer v. Bd. of Cnty. Comm'rs*, 482 F.3d 1232, 1242 (10th Cir. 2007).  While the Court might infer from prior briefing that Ethicon refers to the Burch procedure, autologous slings,

---

[9] Ethicon states that "[c]onsistent with the MDL Court's rulings, the Court should preclude Dr. Elliott's opinions (1) discussing the Material Safety Data Sheet for polypropylene resin, *In re: Ethicon, Inc.*, 2016 WL 4500768, at *2 (S.D.W. Va. Aug. 26, 2016); (2) discussing the alleged clinical effect of degradation, *id.* at *3; (3) offering marketing criticisms, *id.*; (4) criticizing the cutting of the mesh in TVT-Secur, *id.* at *4; (5) offering opinions about Ethicon's compliance with or violation of the FDA's labeling and adverse event reporting regulations; *id.* at *5; (6) offering legal conclusions; *id.* at *6; (7) speculating about Ethicon's knowledge and corporate conduct, *id.*; (8) providing a narrative summary of corporate documents, *id.*, and (9) offering warning opinions other than testimony 'about the specific risks of implanting mesh and whether those risks appeared on the relevant IFU.'"  *In re Ethicon Inc.*, 2018 WL 11245068, at *1 (S.D.W. Va. July 27, 2018).  (ECF No. 126 at 20.)

and allografts, among other things, here, Ethicon has not defined what appears to be an expansive term, "non-mesh surgeries," and has failed to develop any argument upon which the Court might base a ruling on this issue.  Therefore, the Court denies this portion of the Motion without prejudice, to Ethicon raising this argument again at trial, if appropriate.  However, the parties are *strongly cautioned* that to the extent appropriate, the Court will apply its rulings on the Burch procedure, autologous slings, allografts, *etc.*, consistently on certain issues, as broadly as the facts allow.

    2.    <u>Dr. Elliott should be precluded from testifying that a device with lighter weight, larger pore mesh is a safer alternative.</u>

Ethicon seeks to exclude Dr. Elliott's testimony that a TVT-Secur with a lighter weight, larger pore mesh would have been a safer alternative design.  (ECF No. 126 at 21.)  The Court will grant this portion of the Motion, for the same reasons as it has excluded such testimony from Dr. Rosenzweig.

Additionally, Ethicon seeks to exclude Dr. Elliott's testimony that a Prolift device with a lighter weight, larger pore mesh would have been a safer alternative to the Prolene Soft mesh in the Prolift.  (*Id.*)  Unlike the TVT-Secur, Ethicon states that there was a mesh product available to treat pelvic organ prolapse that had a lighter weight mesh than Prolene Soft—Ethicon's Prolift+M device, which contained Ultrapro mesh rather than Prolene Soft.  (*Id.*)  Ethicon states that because Dr. Elliott has conceded that he will not opine that the only lighter weight product designed to treat prolapse was safer than the Prolift, his opinion should be excluded.  (*Id.* at 22.)

In response, Shostrom points out that this concession from Dr. Elliott is from a deposition excerpt from a different case.  Therefore, she argues that this opinion is better suited for cross examination, rather than complete exclusion.  (ECF No. 129 at

24.)

The Court agrees with Shostrom.  The Court denies without prejudice this portion of the Motion and will permit Dr. Elliott to testify that the lighter weight mesh device would have been a safer alternative to Prolift.  Ethicon is free to challenge such opinions on cross examination at trial.

3.      Dr. Elliott should not be allowed to speculate about the duties of a medical device manufacturer.

Ethicon seeks to exclude Dr. Elliott's testimony regarding the level of testing or studies that Ethicon performed with respect to the Prolift and the TVT-Secur, as well as its level of physician training, and its handling of adverse event reports.  (ECF No. 126 at 22.)  In response, Shostrom states that "Dr. Elliott has no intention to opine on the legal adequacy of the testing conducted by Ethicon, but rather on the factual underpinnings of whether or not testing was conducted."  (ECF No. 129 at 25.)

In its reply, Ethicon cites an Eastern District of Kentucky case, *Owens v. Ethicon, Inc.*, 2020 WL 5995586, at *6 (E.D. Ky. Oct. 9, 2020), in which the court opined on precisely the same arguments; even the same expert, Dr. Elliott, was at issue in *Owens*. In *Owens*, the court stated that the plaintiff's argument, identical to Shostrom's argument here, "amounts to a distinction without a difference."  *Id.*  The court further stated that "[l]ogically, opining that there was a complete lack of testing attacks the adequacy of the testing completed."  *Id.*  Seeing no reason why the plaintiff required an expert to opine on facts, which essentially would be offered as a conduit for corporate information, the *Owens* court granted Ethicon's motion to exclude such testimony with certain caveats.  *Id.*

Additionally, Ethicon cites *Heinrich v. Ethicon, Inc.*, 2021 WL 2285435, at *4 (D.

Nev. June 4, 2021), in which the judge confronted the same arguments in connection with Dr. Elliott.

The Court finds *Owens* and *Heinrich* persuasive and adopts their reasoning and findings on this issue.  As in *Heinrich*, the Court permits Dr. Elliott to testify about any tests or studies Ethicon or other third parties conducted and how those tests or studies impact his opinions.  However, he cannot comment on Ethicon's failure to conduct certain testing because he is not qualified to opine on what testing a manufacturer should do, and the "factual underpinnings" of a lack of testing would be nothing more than a summary of corporate documents from an expert witness, which the MDL court rejected.  *See id.* at *4.  Therefore, this portion of the Motion is granted, and denied only to the extent that Dr. Elliott may testify about how any testing Ethicon actually conducted impacts his opinions.

* * * *

The Court pauses to make an additional observation.  The Court notes that Shostrom has endorsed an army of experts, and she is advised that the Court will strictly enforce limits on such testimony to the extent it is duplicative and/or cumulative. *See* Fed. R. Evid. 611.  As set forth above throughout this Order, it appears to the Court that several of Shostrom's experts intend to provide overlapping expert testimony regarding, *inter alia*, whether certain procedures and products constitute safer alternative designs to the TVT-Secur and/or the Prolift.

Under Rule 403, the marginal probative value of allowing such duplicative testimony from all of these expert witnesses is substantially outweighed by a danger of needlessly presenting cumulative evidence at trial.  Accordingly, exercising its authority

under Federal Rule of Evidence 611 to control the introduction of evidence and avoid duplicative testimony, the Court will allow Shostrom to **choose only one expert to opine on each of these topics.**[10]  However, the Court will not preclude more than one of Shostrom's expert witnesses from testifying regarding other non-cumulative matters, if any.  To the extent necessary, the Court's cautionary directive regarding duplicative testimony (expert or lay) applies to both parties.

### III. CONCLUSION

For the reasons stated above, the Court ORDERS that Ethicon's Motion In Limine to Limit Plaintiff's General Experts on Issues Reserved by the MDL Court (ECF No. 126) is GRANTED IN PART and DENIED IN PART as set forth above.

Dated this 28th day of March, 2022.

BY THE COURT:

William J. Martinez
United States District Judge

---

[10] The Court will not list which issues and which experts are at issue here, but Shostrom, as the proponent of her own experts, knows which experts offer opinions on duplicate topics.