**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 20-cv-1933-WJM-STV

LEAH R. SHOSTROM,

     Plaintiff,

v.

ETHICON, INC., and
JOHNSON & JOHNSON,

     Defendants.

---

### ORDER ON MOTIONS IN LIMINE

---

Before the Court are: (1) Plaintiff Leah R. Shostrom's Corrected Motions In Limine ("Plaintiff's MIL") (ECF No. 183) and Defendants Ethicon, Inc. and Johnson & Johnson's (jointly, "Defendants" or "Ethicon") response (ECF No. 188); and (2) Defendants' Motions In Limine ("Defendants' MIL") (ECF No. 163) and Plaintiff's response (ECF No. 191).

For the following reasons, both Plaintiff's MIL and Defendants' MIL are granted in part and denied in part.

### I. LEGAL STANDARD

"The admission or exclusion of evidence lies within the sound discretion of the trial court . . . ."  *Robinson v. Mo. Pac. R.R. Co.*, 16 F.3d 1083, 1086 (10th Cir. 1994); *see also United States v. Golden*, 671 F.2d 369, 371 (10th Cir. 1982) ("Trial judges have discretion to decide whether an adequate foundation has been laid for the admission of evidence.").

Under Federal Rule of Evidence 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would without the evidence; and (b) the fact is of consequence in determining the action."  Relevant evidence is generally admissible and should only be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  "Irrelevant evidence is not admissible."  Fed. R. Evid. 402.

## II. PLAINTIFF'S MIL

### A.  Evidence regarding the number of randomized controlled trials allegedly supporting the safety of Prolift and similar products

Plaintiff requests that the Court exclude evidence regarding the number of randomized controlled trials ("RCTs") which allegedly support the safety of Prolift and similar products.  (ECF No. 183 at 1.)  She argues that Defendants "often include numerous studies unrelated to the Prolift device to improperly inflate the number and mislead the jury" and that statements by witnesses regarding the subject and/or conclusions of RCTs would constitute hearsay.  (*Id.*)  Plaintiff cites no authority for support.

In response, Defendants argue that RCTs are the "best scientific evidence to rebut Plaintiff's allegations that Prolift is defective," and that "any criticism . . . of a witness's references to the number of RCTs conducted can be addressed on cross examination."  (ECF No. 188 at 1.)  Additionally, Defendants state that a witness's statement about the number of RCTs is not hearsay.  (*Id.* (citing *Lewis v. Ethicon, Inc.*, 2014 WL 505234, at *1 (S.D. W. Va. Feb. 5, 2014)).)

At least one other court in the Tenth Circuit has addressed this identical

argument.  In *Kieffaber v. Ethicon, Inc.*, 2021 WL 1177914, at *1 (D. Kan. Mar. 26,

2021), the court found that "to the extent defendants' experts relied on randomized

controlled trials in forming their opinions in this case, evidence about the trials is not

hearsay."  Moreover, the court found that "[n]othing about the 'number' of such trials is

inherently prejudicial or subject to exclusion under Rule 403."  *Id.*  The court determined

that Plaintiff's arguments were best addressed on cross examination.

The Court finds *Kieffaber* persuasive and adopts its reasoning.  Therefore, this

portion of Plaintiff's MIL is denied.

## B.    Testimony that severe Prolift complications are rare

Plaintiff requests that the Court order that in discussing the occurrence rate of

"severe" Prolift complications, defense witnesses be limited to "specific rates or

frequencies of complications as documented in specific studies," and not be allowed to

testify that such complications occur "rarely" or "very rarely."  (ECF No. 183 at 2.)  She

argues that Defendants have no evidence to support an assertion that complications are

rare, as they do not know how frequently such complications occur.  (*Id.*)

The Court finds that to the extent Plaintiff disagrees with a "witness's choice of

words, the appropriate recourse is vigorous cross-examination, not exclusion based on

their choice of words."  *Kieffaber*, 2021 WL 1177914, at *2.  Additionally, similar to

*Kieffaber*, Plaintiff has not defined in this case what she identifies as a "severe"

complication, so the Court cannot realistically enter an order in limine on this subject.

Therefore, this portion of Plaintiff's MIL is denied.

## C.    Defenses of the specific device at issue in this case on vague references to the use of polypropylene material in the human body

Plaintiff requests that the Court exclude evidence that the Prolift is not defective

because the base material, polypropylene, has been "safely" used in the human body in sutures, other stress urinary incontinence ("SUI") devices, and in hernia mesh devices for many years. (ECF No. 183 at 2–3.) She contends that allowing Defendants to present such evidence would "implicate massive and imprecise hearsay" and "require extensive cross-examination and rebuttal evidence to explain the irrelevance and misleading nature of that vague, but powerful assertion to the jury." (*Id.* at 3.) Plaintiff cites no cases for support.

In response, Defendants explain that Prolift is constructed of PROLENE, a polypropylene-based filament that has been safely used in other surgical applications for more than 50 years. (ECF No. 188 at 2.) For support, Defendants cite *Kieffaber*, in which the plaintiff presented this identical argument, which was rejected by the court. *Kieffaber*, 2021 WL 1177914, at *3.

The *Kieffaber* court denied the plaintiff's motion in limine, reasoning that the defendants "should be allowed to offer evidence that both polypropylene and Prolene have a long history of safe and effective use in the human body, and that polypropylene is used in many other permanent medical implants." *Id.* The court further concluded that "[t]his evidence is relevant not only to rebut plaintiff's attack on polypropylene mesh material and to show that Prolift is not defective, but also to establish Ethicon's lack of negligence in selecting polypropylene as the base material for Prolift." *Id.* Additionally, the court noted that "such evidence does not necessarily open the door to evidence of polypropylene mesh devices that have been withdrawn from the market for safety reasons, warnings that the polypropylene base material in very similar devices should not be used to form medical devices for permanent implantation, or the massive number

of lawsuits that have been filed both for pelvic mesh and hernia mesh," and cautioned the plaintiff that she should "refrain from mentioning any such matters without prior approval from the Court, following a conference outside the hearing of the jury." *Id.*

The Court again finds *Kieffaber* persuasive and will follow its reasoning. *See also Geery v. Ethicon*, Civil Action No. 6:20-cv-1975-RBD-LRH, ECF No. 192 at 13, (M.D. Fla. Aug. 13, 2021) ("*Geery* Order") ("It is impossible for Defendants to defend the safety of their products without referencing the history of polypropylene mesh.").  For the reasons explained above, this portion of Plaintiff's MIL is denied.

## D.    Defenses based on other devices

Plaintiff anticipates that Defendants

> likely intend to submit evidence regarding the safety and efficacy of other mesh devices, including the TVT and SUI mid-urethral slings, in support of their claims that the Prolift device was safe and effective.  These devices, which treat different problems and are used in completely different procedures, are materially different from the Prolift and should not be used by proxy to prove the safety or efficacy of Prolift.  Doing so would result in the need for Plaintiff to submit substantial evidence as to the defects and the dangers of the TVT devices as well, and result in a wasteful mini trial on devices not at issue in this case.

(ECF No. 183 at 4.)

Defendants respond that to the extent that TVT, which is made from the same PROLENE material used in Prolift, played a role in the history and development of Prolift, this evidence is relevant and admissible.  (ECF No. 188 at 2.)

The *Kieffaber* court addressed *identical* arguments and concluded that such evidence is admissible.  *Kieffaber*, 2021 WL 1177914, at *3.  Like the *Kieffaber* court, the Court concludes that it cannot wholesale exclude evidence about TVT and the role it played in the history and development of Prolift.  The Court therefore denies this portion

of Plaintiff's MIL.[1]

### E.   General evidence of "professional education" unless connected to Plaintiff's treating physicians

Plaintiff anticipates that when deficiencies in the product labels and related documents are pointed out to Defendants' fact and expert witnesses, they will vaguely respond that additional information was provided to physicians through "professional education."  (ECF No. 183 at 6.)  Absent proof that a document was actually used in professional education with the treating health care providers in this case (with details about when, how, and by whom it was used), Plaintiff argues that such blanket hearsay references should be precluded.  (*Id.*)  Plaintiff argues that evidence of the types of general information or documentation that may have been taught as part of professional education to physicians who are not involved in this case is "just 'noise' and is of no probative value to Plaintiff's case."  (*Id.* at 7.)

In response, Defendants argue that they should be allowed to show what pelvic floor physicians are taught in professional education courses in order to establish the general knowledge of the users of Prolift and the efficacy of Plaintiff's proposed additional warnings.  (ECF No. 188 at 3.)  Additionally, Defendants observe that Dr. Beresford, Plaintiff's implanting physician, testified that she attended an Ethicon professional education program, and so evidence regarding these events is critical foundational evidence directly relevant to Plaintiff's failure to warn claim.  (*Id.*)

The Court agrees with Plaintiff on this issue.  The relevant issue in this case is

---

[1] Given that Plaintiff is no longer pursuing claims related to TVT, Defendants should be reasonably circumspect in the use of time devoted to a device no longer at issue in the case. Accordingly, Defendants are strongly cautioned that they should appropriately confine the evidence concerning TVT to the minimum amount necessary, keeping in mind that the Court will not permit countless mini trials to occur in this case which could confuse the jury.

what Dr. Beresford knew, not what physicians are generally taught in professional education courses.  Defendants point out that Dr. Beresford has testified that she attended one of Ethicon's professional education programs, and so to the extent she did so, Dr. Beresford may testify about such a program.  Therefore, the Court grants this portion of Plaintiff's MIL, and will exclude general evidence about the professional education of other surgeons.

**F.      Evidence about what Defendants allege all "pelvic surgeons know" regarding undisclosed risks or benefits of the Prolift or pelvic surgeries**

Plaintiff seeks to exclude evidence that physicians knew about undisclosed risks or benefits of the Prolift or pelvic surgeries.  (ECF No. 183 at 7–8.)  She argues that such evidence would constitute hearsay and uncorroborated speculation.  (*Id.* at 8.)

Defendants respond that they must be able to present evidence showing that the doctors who use the product already knew of the risk, and that including it in the instructions for use ("IFU") would be unnecessary.  (ECF No. 188 at 3–4.)  For support, Defendants cite other pelvic mesh cases in which the courts admitted such evidence. (*Id.* at 4 (citing *Pitlyk* Order at 2; *Geery* Order at 13).)

The Court agrees with Defendants.  As the *Geery* court explained, Defendants' duty to warn is directed to the physicians implanting the product under the learned intermediary doctrine, so the relevant inquiry is whether the warning was adequate to inform a physician of the risks.  Therefore, what physicians generally knew in the medical community about the product is relevant to the failure to warn claim.  While physicians may not speculate about what another physician knew, and may not relate what they were told by another physician, their own personal knowledge about risks associated with the product may be relevant.  The Court therefore denies this portion of

Plaintiff's MIL.

**G.     Evidence criticizing the care and treatment by Plaintiff's treating physicians**

Plaintiff acknowledges that Defendants have not offered expert testimony for any claim or suggestion that Plaintiff's treating physicians violated the standard of care. (ECF No. 183 at 9.)  Nonetheless, she requests that the Court exclude argument or evidence by Defendants that her treating physicians breached the standard of care because such argument could be irrelevant, confusing, and prejudicial.  (*Id.*)

In response, Defendants state that they "do not intend to argue that Plaintiff's treating physicians were 'negligent' or breached the medical standard of care."  (ECF No. 188 at 4.)  However, Defendants argue that Plaintiff cannot preclude their experts from explaining "how these physicians' actions potentially caused or contributed to [her] injuries," because to do so would "improperly shift the burden of proof" on the element of causation.  (*Id.*)  Defendants cite other pelvic mesh cases in which courts have permitted Defendants to present this type of evidence and noted that challenges to Defendants' alternate causation testimony could be addressed through cross examination.  (*Id.* (citing *Nelson v. Johnson & Johnson*, 2019 WL 4942467, at *3 (E.D. Wis. Oct. 8, 2019)).)

To the extent Defendants state that they do not intend to argue that Plaintiff's treating physicians were negligent or breached the medical standard of care, this portion of Plaintiff's MIL is denied as moot.

However, the Court grants this portion of Plaintiff's MIL to the extent that the Court limits Defendants' testimony on this issue as follows.  Defendants may only present evidence that any of Plaintiff's treating physicians "caused or contributed to" her injuries if that witness has been qualified to testify, to a reasonable degree of medical

certainty, that the physician's conduct caused or contributed to Plaintiff's injuries.  As the *Kieffaber* court noted, "[w]hether plaintiff's doctors caused or contributed to her injuries is a subject well beyond the grasp of a lay jury, and allowing defendants to discredit her claim of causation with medical proof which is couched in terms of mere 'possibilities' would do nothing but invite speculation on this issue."  *Kieffaber*, 2021 WL 1177914, at *3.  "Moreover, it would infect the trial with the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay and waste of time."  *Id.*  In the Court's view, limiting Defendants' presentation of evidence in the manner explained above mitigates the potential problems raised in *Kieffaber*.

## H.    Evidence of Plaintiff's smoking

Plaintiff moves to exclude any evidence of her history of smoking under Rule 403.  (ECF No. 183 at 9.)  Defendants argue that her smoking increases the risk of complications and is therefore relevant, but Plaintiff contends that those general statements of risk are substantially outweighed by undue prejudice and confusion of the issues if her history of smoking is admitted.  (*Id.*)

In response, Defendants argue that Plaintiff's history of smoking is directly relevant to her claims and injuries.  (ECF No. 188 at 5.)  For support, Defendants identify specific witnesses in this case who have "linked smoking with injuries at issue in this case."  (*Id.*)  For example, Defendants cite Dr. Robert Vickerman's testimony stating that smoking affects wound healing and can contribute to postoperative infections and hernias, both of which Plaintiff experienced.  (*Id.* (citation omitted).)  They also cite evidence from Brian Flynn noting that smoking is a risk factor for fistulas and mesh exposure.  (*Id.* (citation omitted).)  Defendants also contend that the cases cited by Plaintiff to support her Rule 403 argument are distinguishable because there is nothing

unfairly prejudicial about the admission of this evidence.

The Court agrees with Defendants and denies this portion of Plaintiff's MIL.  The evidence regarding Plaintiff's history of smoking is not unduly prejudicial; rather, it is evidence related to *her health* in a case about *her health* and which may bear on her claimed injuries.

**I.    Reference to attorney advertisements and circumstances regarding Plaintiff's legal relationship with counsel**

Plaintiff requests that the Court exclude evidence regarding how, or under what circumstances, she selected her attorneys, including television commercials or internet sites about the transvaginal mesh litigation (even if those sites involved attorney promotion).  (ECF No. 183 at 10.)  She argues that such evidence is "wholly unrelated to whether Ethicon provided an adequate warning to the implanting physician about the Prolift's risks of complication."  (*Id.*)  Further, she argues that the Court should exclude the evidence under Rule 403.  (*Id.*)

In response, Defendants argue that "Plaintiff testified that she saw an advertisement for pelvic mesh litigation before she filed suit in 2013, but also said that she did not have problems with her Prolift implant until 2014."  (ECF No. 188 at 5.)  As such, Defendants contend the evidence is relevant to Plaintiff's credibility concerning her injuries.  (*Id.*)  For support, Defendants cite *Lewis*, 2014 WL 505234, at *1, in which the Court found that evidence that "Ms. Lewis was prompted by a television commercial to file suit" was "probative of her credibility regarding her injuries."

Having carefully considered the parties' arguments, the Court declines to follow the *Lewis* court on this issue and grants this portion of Plaintiff's MIL.  The Court finds that the manner in which she selected her attorneys is both irrelevant and immaterial to

the claims at issue in this case.

## III. DEFENDANTS' MIL

### A.    Evidence of post-implant revisions to product warnings

Defendants move to exclude evidence of post-implant revisions to IFUs under Federal Rule of Evidence 407.  (ECF No. 163 at 1–2.)  Plaintiff responds that these revisions were not voluntary and so do not implicate Rule 407 and the revisions can be used as impeachment.  (ECF No. 191 at 1–2.)

Evidence of subsequent remedial measures is inadmissible to prove "negligence; culpable conduct; a defect in a product or its design; or a need for warning or instruction."  Fed. R. Evid. 407.  However, the evidence may be admitted "for another purpose, such as impeachment or—if disputed—proving ownership, control, or the feasibility of precautionary measures."  *Id.*  In other words, the admissibility of such evidence depends on the context and method by which Plaintiff seeks to introduce it.

Accordingly, the Court grants this portion of Defendants' MIL to the extent that Plaintiffs are precluded from presenting evidence of subsequent remedial measures to prove "negligence; culpable conduct; a defect in a product or its design; or a need for warning or instruction."  *See Werner v. Upjohn Co.*, 628 F.2d 848, 859 (4th Cir. 1980) ("If subsequent warnings are admitted to prove antecedent negligence simply because FDA required or might have required the change, then drug companies may be discouraged from taking early action on their own and from participating fully in voluntary compliance procedures."); *Sutphin v. Ethicon, Inc.*, 2020 WL 5079170, at *6 (S.D.W. Va. Aug. 27, 2020), *reconsideration denied*, 2020 WL 5269409 (S.D.W. Va. Sept. 3, 2020); *see also Wise v. C.R. Bard, Inc.*, 2015 WL 541933, at *7 (S.D.W. Va. Feb. 10, 2015).  However, to the extent Plaintiff attempts to introduce this evidence for

purposes other than those expressly precluded by Rule 407, she may attempt to do so at trial, and Defendants may object where appropriate.

**B.    A 2005 e-mail chain among members of the "TVM Group" discussing a Prolift patient questionnaire**

Defendants move to exclude a September–October 2005 e-mail chain (ECF No. 163-2) among members of the TVM Group, a group of French physicians who invented and worked with Ethicon in developing and testing Prolift.  (ECF No. 163 at 3.) According to Defendants, the purpose of the e-mail chain was to discuss a detailed questionnaire meant for Prolift patients.  (*Id.*)  The questionnaire asked intimate questions regarding sexual activity, such as fellatio and sodomy.  (*Id.*)  One surgeon stated: ". . . I would not like for my wife to undergo this procedure?"  (*Id.*)  Defendants contend that the e-mail is ambiguous, irrelevant, unfairly prejudicial, and inadmissible hearsay.  Moreover, Defendants argue that at least one court considering this e-mail chain has concluded that the comment about one author's wife was hearsay and that explaining all of the authors' comments would require a mini trial and would waste time and confuse the jury.  *See Dunfee v. Ethicon, Inc.*, Trial Tr. at 105:13-16 (Phila. Cnty. Ct. Com. Pl. June 19, 2019).

In response, Plaintiffs argue that the e-mails concern "the very device at issue" and are "highly relevant to demonstrate, among other things, that Defendants were on notice of serious risks with the product prior to [Plaintiff's] implant."  (ECF No. 191 at 2.) Plaintiff acknowledges that the e-mails "may include some phrases which are particularly 'off-color' and is amenable to discussing redaction of certain portions."  (*Id.*) Plaintiff cites no case law for support.

The Court observes that Plaintiff completely fails to address the critical hearsay

problems Defendants raise concerning the content of this e-mail chain.  Accordingly,

having no basis to rule otherwise, the Court finds that the referenced e-mail chain

constitutes inadmissible hearsay and grants this portion of Defendants' MIL.

**C.      A 2009 e-mail from Dr. Fah Che Leong discussing a Prolift adverse event
report**

Defendants move to exclude P00156 and P02653, a February 2009 e-mail chain

from physician Dr. Fah Che Leong to Ethicon employee Scott Jones, in which Dr. Leong

stated that he had a patient who suffered complications after being implanted with Prolift

by another doctor and that "[t]his patient will have a permanently destroyed vagina."

(ECF No. 163-4 at 2.)

Defendants argue this e-mail is inadmissible because it is hearsay to the extent

Plaintiff intends to offer Dr. Leong's statements for the truth of the matter asserted.

(ECF No. 163 at 4.)  Additionally, Defendants state the e-mail is inadmissible for the

non-hearsay purpose of showing notice because it was sent about two years after

Plaintiff was implanted with Prolift.  (*Id.*)  Defendants also argue that "Plaintiff cannot lay

a foundation demonstrating substantial similarity between the unidentified patient's

adverse event discussed in Dr. Leong's email and her own experience, as necessary to

demonstrate the relevance of the evidence."  (*Id.* (citing *Wheeler v. John Deere Co.*,

862 F.2d 1404, 1407 (10th Cir. 1988) (before introducing evidence of other accidents

"the party seeking its admission must show the circumstances surrounding the other

accidents were substantially similar to the accident involved in the present case")).)

Finally, Defendants assert that any probative value of the e-mail is outweighed by the

risk of unfair prejudice and juror confusion due to the inflammatory language used in the

e-mail, as well as the fact that Dr. Leong did not implant the Prolift discussed in his e-

mail, so there is no admissible information about the unknown patient's medical history or comorbidities that could have contributed to her adverse outcome.  (*Id.*)

In response, Plaintiff argues that the e-mail is admissible because it shows what Defendants knew about their product and when they knew it, which she states goes directly to the claims in this case.  (ECF No. 191 at 2.)  She further argues that the e-mail is not hearsay because it is not offered for the truth of the matter asserted but for notice.  (*Id.* at 2–3.)  Notably, however, Plaintiff does not respond to Defendants' argument that the e-mail is nonetheless inadmissible if offered for the purpose of notice because it was sent two years after Plaintiff was implanted with Prolift.

Numerous courts have considered this very same e-mail exchange between Dr. Leong and Mr. Jones, and it appears that several courts have excluded the evidence. *See, e.g.*, *Kieffaber v. Ethicon, Inc.*, 529 F. Supp. 3d 1219, 1223 (D. Kan. 2021) (precluding the plaintiff from introducing Dr. Leong's e-mail); *Bellew v. Ethicon, Inc.*, 2014 WL 6680356, at *2 (S.D. W. Va. Nov. 25, 2014) (same).  The Court concludes that Plaintiff's argument about notice is without merit because any notice created by this 2009 e-mail occurred two years after Plaintiff's implant in 2007.  Further, to the extent the e-mail *is* offered for the truth of the matter asserted, it is inadmissible under Rule 403.  "[A] report from a single doctor who did not perform the Prolift implant in question cannot constitute sufficient notice of a widespread issue, and that the email has minimal probative value which is greatly outweighed by the risk of unfair prejudice and juror confusion."  *Kieffaber*, 529 F. Supp. 3d at 1223.  Accordingly, the Court grants this portion of Defendants' MIL.

## D.   Prolift Physicians In-Depth Interviews

Defendants move to exclude P01307, the Prolift Physicians In-Depth Interviews

("the IDIs"), a report created in 2008 for Ethicon by a consulting firm for the purpose of exploring potential improvements to Prolift.  (ECF No. 163 at 5.)  Defendants argue that: the IDIs are inadmissible hearsay, as Plaintiff cannot lay the foundation to demonstrate that they qualify as business records under Federal Rule of Evidence 803(6); that Plaintiff cannot establish that the physicians' underlying statements are excepted from the rule against hearsay, Federal Rule of Evidence 805; that the IDIs are irrelevant to the issue of notice because they post-date Plaintiff's 2007 implant surgery; and that any probative value of this evidence is substantially outweighed by the danger of unfair prejudice to Defendants.  (*Id.*)

In response, Plaintiffs merely point the Court toward the *Geery* Order, in which the court rejected Defendants' arguments and ruled the IDIs are admissible.  (ECF No. 191 at 3.)

The Court has reviewed the relevant portion of the *Geery* Order but declines to follow it.  Plaintiff fails to address the critical hearsay problems that Defendants identify.  More importantly, the IDIs were created in 2008 and therefore post-date Plaintiff's surgery.  On this basis, the IDIs are also irrelevant to the issue of notice.  Therefore, the Court grants this portion of Defendants' MIL.  Plaintiff may not introduce evidence of the IDIs.

**E.    A 2011 report published by the PA Consulting Group entitled, "Investigating Mesh Erosion in Pelvic Floor Repair"**

Defendants move to exclude P02575, a 48-page industry report published by PA Consulting Group in 2011 entitled "Investigating Mesh Erosion in Pelvic Floor Repair." (ECF No. 163-8.)  A consulting firm prepared this report to assist Ethicon's investigation of a new mesh device to treat pelvic organ prolapse, and it includes a broad discussion

of numerous pelvic mesh products (including products not made by Ethicon) and other surgical procedures to treat prolapse.  (ECF No. 163 at 6.)  Defendants argue that the report is inadmissible hearsay, as it was not authored by Defendants and is not a statement by a party opponent.  (*Id.*)  Defendants also argue that Plaintiff cannot show it is a business record because they will not be able to lay the requisite foundation. Further, Defendants argue the report is inadmissible to show notice because it was written about four years after Plaintiff's implant surgery.  Finally, Defendants argue that any probative value is substantially outweighed by the danger that the report will unfairly prejudice Defendants, confuse the jury, and waste the Court's time.

In response, Plaintiff argues that the report is not hearsay under Rule 801(d)(2)(C) because it was made by a person whom the party authorized to make a statement on the subject.  (ECF No. 191 at 3.)  Further, she argues the evidence is admissible under 801(d)(2)(D) because it was made by the party's agent or employee on a matter within the scope of that relationship while it existed; specifically, she states that Ethicon contracted with PA Consulting Group and commissioned this report, and PA Consulting Group was authorized and paid to make these statements.  She also contends that the report discusses the exact injury at issue in this case (mesh erosion) and contains information about the design and the material used in the Prolift.

According to Plaintiff, the report directly relates to the design defect claims at issue and the notice Ethicon had regarding mesh erosions.  Plaintiff emphasizes that the MDL court admitted the report, finding that "its discussion of general mesh erosion is relevant to the plaintiffs' claims," and that it also "contains erosion rates of mesh, which have probative value."  *In re Ethicon, Inc., Pelvic Repair Sys. Prod. Liab. Litig.*, 2014 WL

505234, at *11 (S.D.W. Va. Feb. 5, 2014); *Huskey v. Ethicon, Inc.*, 2014 WL 3861778, at *4 (S.D.W. Va. Aug. 6, 2014).

While Plaintiff states that Ethicon contracted with PA Consulting Group and commissioned the report, these conclusory statements are insufficient for the Court to find that PA Consulting Group was Ethicon's agent such that it had the power to bind Ethicon on the matters contained in the report.  This deficiency precludes the Court from concluding that the report is not hearsay under the provisions of FRE 801(d)(2) as a statement offered against an opposing party.  Further, and once again, the Court agrees with Defendants that the report is not admissible to show notice because it post-dates Plaintiff's surgery.  *See Kieffaber*, 529 F. Supp. 3d at 1224 (observing that the same report was not relevant as proof of notice because it was developed long after plaintiff's implant surgery in 2007).  Therefore, the Court grants this portion of Defendants' MIL. Plaintiff may not introduce evidence of the PA Consulting Group report on mesh erosion.

**F.  Evidence of other lawsuits and claims involving pelvic mesh products or other Johnson & Johnson companies' products**

Defendants move to preclude Plaintiff from referring to the number of lawsuits filed involving pelvic mesh devices, as well as lawsuits involving unrelated products manufactured by Johnson & Johnson companies, including other medical devices, drugs, and cosmetic products.  (ECF No. 163 at 7.)  They emphasize that numerous other courts have excluded this type of evidence.  (*Id.* (citing *Lewis*, 2014 WL 505234, at *6; *Bellew*, 2014 WL 6680356, at *2; *Huskey*, 2020 WL 5079170, at *6; *Salinero v. Johnson & Johnson*, 2019 WL 7753445, at *3 (S.D. Fla. Sep. 25, 2019).)

Additionally, Defendants argue that the fact that many lawsuits have been filed

against them is irrelevant, as it does not tend to prove whether a defect in the Prolift caused Plaintiff's injuries.  (*Id.*)  Finally, they argue that the evidence fails under Rule 403 and would lead to a series of mini trials.  Notably, Defendants "acknowledge that the jury will learn throughout trial that other lawsuits have been filed against Ethicon and mesh manufacturers in general," as they intend to cross examine Plaintiff's experts on the total amount of compensation they have received across the pelvic mesh litigation. (*Id.* at 8.)

In response, Plaintiff argues that one of her claims in this case involves the Colorado Consumer Protection Act ("CCPA") and notes that one of the factors in that claim is that of the public impact.  (ECF No. 191 at 4.)  According to Plaintiff, one way to prove the public impact of Defendants' alleged fraud is to discuss the fact that there are other injured women who have been impacted by the device, and she contends that prohibiting her from doing so would be prejudicial.  (*Id.*)  Further, she argues that evidence of other incidents involving Defendants' product, including prior lawsuits, is admissible to show a defendant's notice or knowledge of a particular defect, among other things.

Upon due consideration, the Court grants in part and denies in part this portion of Defendants' MIL as follows.  To prove up her CCPA claim, Plaintiff may introduce evidence of other lawsuits involving Prolift.  Because this evidence is not being offered to show that Defendants were on notice of Prolift's alleged defects, but is instead offered to prove an element of her CCPA claim, Plaintiff may only introduce evidence of lawsuits that post-date her implant surgery.  However, the Court finds that evidence of other lawsuits involving unrelated products manufactured by Johnson & Johnson

companies, including other medical devices, drugs, and cosmetic products, are irrelevant and prejudicial under Rule 403, and are excluded.

## G.      Material Safety Data Sheets for raw polypropylene

Defendants move for an Order excluding P02824 and P03075, Material Safety Data Sheets ("MSDSs") (ECF No. 163-9) for raw polypropylene published by Sunoco, Ethicon's polypropylene supplier.  (ECF No. 163 at 8.)  Defendants argue that "the information contained in an MSDS for raw polypropylene is not relevant to the safety and effectiveness of Prolift because Prolift is not made of raw polypropylene."  (*Id.*) Defendants explain that "[i]nstead, Ethicon treats the polypropylene in the Prolift with antioxidants and other additives to prevent oxidation when implanted in the body. Requiring Defendants to spend valuable trial time explaining this important distinction would confuse the jury while providing no support for Plaintiff's claims."  (*Id.* at 9.)  For support, Defendants cite cases excluding evidence of MSDSs.  (*Id.* (citing *In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 2016 WL 4500768, at *2–3 (S.D.W.V. Aug. 26, 2016) (holding that Dr. Elliott could not rely on an MSDS to opine that polypropylene is not suitable for implantation in the pelvic floor); ECF No. 163-10, Order, *Freeman v. Ethicon, Inc.*, 2:20-cv-10661-CBM-SK (C.D. Cal. Jan. 7, 2022) (holding that MSDSs for raw polypropylene were not relevant to the Prolene material used to make Ethicon's pelvic mesh products)).)

In response, Plaintiff argues that the MSDSs "demonstrate[] that the properties of the plastic polypropylene material used in Ethicon's products may be dangerous for use in a woman's body."  (ECF No. 191 at 5.)  She vaguely argues that Defendants' decision to ignore the MSDS warnings is relevant to the duty to warn and to her defective design and punitive damages claims.

The Court notes that most motions in limine on this issue in other pelvic mesh lawsuits involved a request to exclude evidence that polypropylene causes or may cause cancer. *See, e.g.*, *Sutphin*, 2020 WL 5079170, at *7; *In re Ethicon, Inc., Pelvic Repair Sys. Prod. Liab. Litig.*, 2014 WL 505234, at *10 (S.D.W. Va. Feb. 5, 2014). The Court cannot discern from Plaintiff's vague response whether she intends to introduce evidence that polypropylene causes or may cause cancer. Nonetheless, the Court has determined it will follow Judge Goodwin's approach on this specific point. In *Sutphin*, Judge Goodwin noted that the plaintiff did not allege any injuries related to cancer, and therefore, he excluded the MSDS to the extent it relates to an increased risk of cancer. *Sutphin*, 2020 WL 5079170, at *7. Similarly here, Plaintiff has not alleged injuries related to cancer. Therefore, the Court grants in part Defendants' MIL to the extent that Plaintiff cannot introduce evidence of the MSDSs insofar as it relates to an increased risk of cancer.

The Court also notes that in other cases, the plaintiffs point to very specific warnings in the MSDSs for the judges' consideration. Here, Plaintiff does not provide such specific arguments, instead relying on vague assertions that the MSDS demonstrates that polypropylene "may be dangerous for use in a woman's body." The Court, therefore, cannot evaluate whether such evidence should be excluded. Thus, to the extent Plaintiff can identify legitimate bases other than an increased risk of cancer for introducing the MSDSs at trial, the Court reserves ruling on this portion of Defendants' MIL. Defendants may raise objections at trial to the introduction of the MSDSs for purposes unrelated to the risk of cancer.

## H.    References to alleged spoliation of Defendants' company documents

Defendants move to exclude any references to the alleged spoliation of Ethicon's

company documents, including the testimony of James Mittenthal addressing Ethicon's document retention policies.[2]  (ECF No. 163 at 9.)  Defendants point out that the MDL court has rejected efforts by plaintiffs to introduce spoliation-related evidence in more than 60 cases and that numerous federal and state courts in the pelvic mesh litigation have also excluded this evidence.  (*Id.* at 9–10 (citing cases).)  Specifically, Defendants argue that their alleged failure to retain documents is irrelevant to whether Prolift is defective and caused Plaintiff's injuries.  (*Id.* at 10.)  They also argue such evidence is irrelevant and would confuse the jury.

In response, Plaintiff argues that evidence of spoliation was rejected in other cases as a result of the law of that forum, and that such evidence may nonetheless be presented and adverse inferences may be appropriately drawn based on the state-specific law of a different forum.  (ECF No. 191 at 5.)

The Court denies this portion of Defendants' MIL because a motion in limine is not the proper procedural vehicle by which the Court can address the issue of spoliation, or the appropriate potential sanctions in the event that spoliation is proven to have occurred.  Rather, the appropriate way to bring the spoliation issue before the Court would have been a motion by Plaintiff for sanctions as a result of such alleged spoliation.  However, Plaintiff has not filed such a motion in this protracted lawsuit, despite the fact that she has been aware of the potential spoliation issue for at least

---

[2] Defendants state that Mr. Mittenthal's testimony discusses his interviews of several former Ethicon employees who had worked on the Prolift project, documents those employees' knowledge (or lack thereof) of litigation holds, and addresses whether those employees' personnel files were retained after they left Ethicon.  (ECF No. 163-11, Excerpts from Dep. of James Mittenthal.)

eight years.[3]

Despite Plaintiff's dilatory practice, the Court is duty-bound to permit her to file a motion for sanctions based on alleged spoliation.  The Court cautions Plaintiff to consider the following state of affairs in this case.  The Court has ruled that she may not introduce James Mittenthal's deposition at trial.  (ECF No. 182 at 4.)  In addition, the cases Plaintiff cites to support her spoliation argument were those in which the MDL court only found that Defendants negligently spoliated documents.  The Court understands that under Colorado law, a party need not show willful misconduct to show spoliation; instead, negligence is sufficient.  *See People ex rel. A.E.L.*, 181 P.3d 1186, 1196 (Colo. Ct. App. 2008) ("The court is not limited to imposing a sanction only for intentional spoliation, but may impose one based upon mere negligence.") (citation omitted).  Nonetheless, to obtain the harsh sanction of an adverse inference jury instruction from this Court, Plaintiff will have to do *much more* than show negligent spoliation by Defendants.  She will need to demonstrate, among other things, substantial prejudice to obtain such drastic relief from the Court as opposed to, if appropriate, a lesser sanction. This Court's views on this subject are set forth in detail in *Mueller v. Swift*, 2017 WL 3058027 (D. Colo. July 19, 2017).

Additionally, should Plaintiff decide to file a motion for sanctions, she must address the threshold issue regarding the law the Court must apply.  The parties have agreed that Colorado law applies to this lawsuit.  However, this is a federal court sitting in diversity, and therefore, federal procedural law and state substantive law apply.  *Hanna v. Plumer*, 380 U.S. 460, 465 (1965).  Any motion for sanctions must provide

---

[3] For support, she relies on an MDL Order issued on February 4, 2014.  (ECF No. 191-2 at 44.)

binding authority on the issues of spoliation and appropriate sanctions.  Additionally, Plaintiff must provide binding authority supporting her requested sanctions, keeping in mind the Court's admonition that an adverse inference instruction is unlikely in the event of spoliation which occurred solely as the result of negligence on the part of Defendants.

## IV. CONCLUSION

For the reasons explained above, the Court ORDERS:

1.    Plaintiff's MIL (ECF No. 183) is GRANTED IN PART and DENIED IN PART as set forth above;

2.    Defendants' MIL (ECF No. 163) is GRANTED IN PART and DENIED IN PART as set forth above; and

3.    If Plaintiff chooses to file a motion for sanctions, she shall do so not later than **June 1, 2022**.  Any such motion must be no longer than 10 pages, exclusive of attorney signature block and certificate of service.  Defendants shall respond to any motion for sanctions by **June 6, 2022**.  Any such response must be no longer than 10 pages, exclusive of attorney signature block and certificate of service.  No reply will be permitted absent further Order of Court.

Dated this 26th day of May, 2022.

BY THE COURT:

William J. Martinez
United States District Judge